**CENTER FOR AUTO SAFETY**

v.

**ENVIRONMENTAL PROTECTION AGENCY.**

No. 83–1221.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 21, 1983.

Decided March 27, 1984.

Frederic Townsend, Washington, D.C., with whom Alan B. Morrison and Cornish F. Hitchcock, Washington, D.C., were on the brief, for appellant.

Laura F. Einstein, Attorney-Advisor, Dept. of Justice, Washington, D.C., of the Bar of the Dist. of Columbia Court of Appeals, pro hac vice, by special leave of the Court, with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time of the brief was filed, Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA and SCALIA, Circuit Judges, and RICHEY *, District Judge for the United States District Court for the District of Columbia.

CHARLES R. RICHEY, District Judge:

This is an appeal from the trial judge's grant of the government's Motion for Summary Judgment based on a detailed affidavit in lieu of an *in camera* inspection of requested documents under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976 & Supp. V 1981). Appellant, Center for Auto Safety ("the Center") is a non-profit consumer organization chartered under the laws of the District of Columbia for the purpose of improving the quality, safety, fuel efficiency and emissions controls of motor vehicles. It was founded in 1973 by Ralph Nader and Consumers Union. This case arises from the trial court's decision *not* to inspect 19 documents *in camera* that the Center had requested from the Environmental Protection Agency (EPA) under the FOIA. The documents concerned an EPA decision to accept a plan under which General Motors (GM) would "offset" previously illegally high levels of auto emissions by lowering such levels in future car model years. This Court is asked to decide the circumstances under which a district court must conduct an *in camera* review of a small sample of documents in order to verify an agency's assertions that factual material is "inextricably intertwined" with exempt deliberative portions of records. Specifically, the Center urges this Court to adopt a limited *per se* rule requiring the trial court to conduct an *in camera* review of documents claimed to be exempt under Exemption 5 of the FOIA.[1] Because we find that adoption of such a *per se* rule would contravene the clear grant by Congress of broad discretion to trial judges in this matter, and because we find that the trial court did not abuse its discretion in this case, we affirm the trial court's decision regarding *in camera* inspection.

## FACTUAL BACKGROUND

After a large number of 1979 General Motors automobiles had been sold to the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. Exemption 5 of the FOIA provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" need not be released. 5 U.S.C. § 552(b)(5) (1976).

public, EPA tests revealed that each of more than half a million cars was emitting levels of nitrogen oxides in violation of the Clean Air Act, 42 U.S.C. § 7401 *et seq.* GM proposed offsetting the excess pollution by building its 1982 and 1983 cars to produce lower emissions standards than the law required. In August of 1982, the EPA approved such a plan.[2]

On August 5, 1982, the Center submitted an FOIA request to the EPA for all documents concerning the decision to accept the offset plan. J.A. 80. On September 9, 1982, EPA released some of the documents but withheld a number of documents under the belief that they were exempt from disclosure under Exemption 5, 5 U.S.C. § 552(b)(5). J.A. 83. The Center filed a timely administrative appeal which was not ruled upon within the 20 working days required under the FOIA. *See* 5 U.S.C. §§ 552(a)(6)(A), (C); J.A. 87. After this exhaustion of administrative remedies, the Center brought suit in the United States District Court for the District of Columbia.

By letter dated December 20, 1982, EPA notified the Center that the administrative appeal had been considered, and that EPA "no longer objects to disclosure of 32 documents in their entirety ... and of portions of 30 documents." Brief for Defendant at Exhibit A. EPA enclosed these documents with the letter. EPA continued to withhold 53 documents. As to these 53 documents, with the exception of one document[3], EPA maintained that they were "intra-agency communications and records of settlement negotiations which reflect EPA's deliberative process" and therefore exempt under Exemption 5. *Id.*

Both parties moved for summary judgment with respect to the remaining documents. EPA asserted that all of the documents were "predecisional and deliberative in nature" and that "[a]ll segregable factual material contained in the documents" had been disclosed. J.A. 22, 23. In support of its Motion for Summary Judgment, EPA submitted an affidavit of Charles N. Freed, the Director of EPA's Manufacturers Operations Division of the Office of Mobile Sources and a *Vaughn* Index[4] listing the 53 documents being withheld. The Center opposed EPA's motion and limited its arguments to 19 of the 53 remaining documents. In addition, the Center requested that the District Court examine those documents *in camera.*[5] *See* Reply Brief of Plaintiff-Appellant at Exhibit II.

On January 27, 1983, the District Court denied the Center's request for *in camera* review "due to the detailed explanatory material promptly supplied by the EPA." J.A. 3–4. This appeal ensued.[6]

---

2. This decision has been appealed to this Court in *Center for Auto Safety v. Gorsuch,* No. 82–2032. Oral arguments were heard by the Court on May 24, 1983. At this time, no decision has been issued.

3. EPA claimed that automobile sales projections prepared by General Motors were exempt under Exemption 4 of the FOIA. That exemption provides that "trade secrets and commercial or financial information obtained from a person and privileged or confidential" are exempt from disclosure. 5 U.S.C. § 552(b)(4). Appellant does not challenge the application of Exemption 4 to this document.

4. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

5. Both parties state in their respective briefs that the Center's request for *in camera* inspection was limited to 11 of the 19 documents in dispute. *See* Brief for Defendant-Appellee at p. 7; Brief for Plaintiff-Appellant at p. 5. Our review of the record reveals a different conclusion. It appears from both the transcript of the oral argument on the Cross-Motions for Summary Judgment and the District Court's January 27, 1983 memorandum opinion, that the Center requested *in camera* inspection of *all* of the nineteen documents.

6. On May 9, 1983, the House Subcommittee on Health and the Environment, which has oversight responsibility over the activities of the EPA, made public four of the documents EPA had been withholding. Appellant claims that a comparison of the documents released with the descriptions provided in the *Vaughn* Index and affidavit show that EPA's withholding of the documents was erroneous and taints the truthfulness of EPA's submissions to the Court. EPA claims that the public release of these documents makes this case moot. These issues are addressed elsewhere in this opinion. *See infra* at pp. 19–20, 24.

### THE ISSUE CONCERNING IN CAMERA INSPECTION IS PROPERLY BEFORE THIS COURT

■ Appellee argues that the issue of *in camera* inspection "was never raised by the appellant at the District Court." Brief for Defendant-Appellee at p. 4, n. 3. More specifically, appellee claims that the request was based on grounds "entirely unrelated" to any need to verify that facts were inextricably intertwined with deliberative materials. *Id.* If that were the case, the issue could not be raised for the first time on this appeal. *See, e.g., Miller v. Avirom,* 384 F.2d 319, 321–22 (D.C.Cir.1967). Such is not the case here.

Upon review of the record below, the Court finds that the first request by the Center for *in camera* review appeared in its Reply Memorandum and Opposition to Defendant's Cross-Motion For Summary Judgment. In that document, the Center informed the trial court that it would limit its arguments to only 19 of the 53 documents withheld, but specifically requested that "the Court review the remainder of the documents *in camera* to determine if the EPA description is complete and accurate." Reply Memorandum at p. 2. This request is directly contrary to appellee's contention that the Center requested the inspection only to discover "the extent that they may have advised the EPA Administrator that the offset remedial plan was legal." Brief of Defendant-Appellee at p. 5. The descriptions of the documents supplied by the EPA included a statement that "[a]ll segregable factual material contained in the documents" had been disclosed. J.A. 22, 23. The Center's request for inspection clearly included a desire to have the Court determine whether that statement was accurate.

Appellee's position is further undermined by the transcript of the oral arguments on the cross-motions for summary judgment. With respect to a set of eight factual or technical documents prepared by experts at the agency, the Center asked the trial court "to look at them and see if the descriptions are accurate...." Reply Brief of Plaintiff-Appellant at Exhibit II, p. 6. With respect

to an additional set of eleven legal documents, the Center requested the Court "to review those documents *in camera* to see what they say." *Id.* at 4. Finally, in rebuttal argument, counsel for the Center told the Court:

> ... the descriptions of the documents we are seeking appear to contain factual material. At a minimum, they may contain segregable factual material.
>
> \*       \*       \*       \*       \*       \*
>
> We urge your honor to look at the documents and see if they give any reasons for that decision or if they contain the kind of factual material not protected by the deliberative process privilege.

*Id.* at 13–14.

Based upon these statements and requests made to the trial court, we conclude that a request for *in camera* inspection on the issue of whether non-exempt facts appeared in the documents was properly made below, and is thus a proper issue for us to address on appeal.

■ Appellee also argues that this case is moot because all of the documents containing factual information have been released by Congress. Specifically, EPA claims that it withheld inextricably intertwined facts from only one document (Document 25) and since that document was made public on May 9, 1983, the present case is moot. Appellee is correct in pointing out that "once the records are produced [in an FOIA case] the substance of the controversy disappears and becomes moot since the disclosure the suit seeks has already been made." *Crooker v. State Department,* 628 F.2d 9, 10 (D.C.Cir.1980); *Carlisle Tire and Rubber Co. v. Customs Service,* 663 F.2d 210 (D.C.Cir.1980) (when documents were released, any case or controversy regarding them evaporated); 5 U.S.C. § 552(a)(4)(B) (1976). We cannot agree, however, that this case is moot.

■ As noted before, the record is clear that the Center requested *in camera* inspection for nineteen (19) different documents. One of the major concerns of the Center was that segregable factual materi-

al could have been in these documents, but not released by the EPA. On May 9, 1983, Congress released only four of the documents the Center was concerned about. While this case is certainly moot with respect to those four (4) documents released by Congress, it is not moot with respect to the other fifteen (15) documents that the district court refused to examine *in camera*. The appellant has raised an important issue concerning the proper role of such inspections. Neither the importance of the issue nor the existence of a controversy is diminished when four of nineteen documents are released. Appellants still have a viable claim concerning the propriety of the trial judge's refusal to examine the remaining 15 documents.

### THE USE OF IN CAMERA INSPECTIONS IS DISCRETIONARY, NOT MANDATORY

Appellant contends that the district court should have examined the documents at issue *in camera* to determine whether any portion of the materials consists of non-exempt, "reasonably segregable" information. It has long been the rule in this Circuit that non-exempt factual information in a document must be disclosed unless it is inextricably intertwined with exempt material. *See e.g., Mead Data Central, Inc. v. Dept. of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). In 1974, Congress expressly incorporated this requirement into the FOIA which now provides that "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt...." 5 U.S.C. § 522(b) (1976).

■ Appellant urges this Court to adopt a *per se* rule that trial courts must use *in camera* inspection where the agency claims that it is withholding factual material because such material is inextricably intertwined with exempt deliberative material under Exemption 5. Additionally, appellant narrows its proposed rule to require the court to review only a "small sample" of the withheld documents in order to insure the accuracy of agency affidavits and *Vaughn* Indices. Brief of Plaintiff-Appel-

lant at p. 16. However, upon review of the plain language of the FOIA, the legislative history, and the relevant caselaw, it becomes apparent that Congress intended to impose no mandates upon the trial court, but instead leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge.

In 1974, Congress amended the FOIA and invested the district court with discretion to conduct *in camera* inspections without the necessity of relying upon agency affidavits. The District Court is required to determine FOIA exemption claims "de novo" and *"may* examine the contents of such agency records *in camera* ..." 5 U.S.C. § 552(a)(4)(B) (emphasis added). Thus, the plain words of the FOIA impose no mandatory obligation on the district court to review the actual documents.

Moreover, in addition to the above, the legislative intent, as expressed in the Conference Report, clearly reflects the view that *in camera* reviews were to be a "secondary tool of FOIA enforcement." *Ingle v. Department of Justice,* 698 F.2d 259, 264 (6th Cir.1983). The Conference Report notes:

> [t]he court may examine records *in camera* in making its determination under any of the nine categories of exemptions under section 552(b) of the law ... While *in camera* examinations need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders *in camera* inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.

S.Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6267, 6287–88. Furthermore, the House Report indicates that the FOIA merely "permit[s] such *in camera* inspection at the discretion of the Court." H.R.Rep. No. 93–1380, Conference Rep. 93d Cong., 2d Sess. 9 (1974).

The Supreme Court has noted that:

> The in camera review provision [of the FOIA] is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved; it thus does not mandate that the documents be individually examined in every case.

*NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978). In addition, previous cases in this Circuit have held that *in camera* inspections are conducted at the discretion of the trial judge. In *Allen v. Central Intelligence Agency,* 636 F.2d 1287 (D.C. Cir.1980), this Court undertook a comprehensive review of the legislative history of the 1974 and 1976 Amendments to the FOIA as it related to the issue of *in camera* inspection. We concluded that:

> [t]he Conference Committee ... reported out a bill that, just as the Senate and House versions had, granted reviewing courts broad discretion to employ *in camera* inspection.

*Id.* at 1296.[7] We have consistently held that with respect to decisions to review documents in FOIA cases, the district courts have substantial discretion. In *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir. 1978), this Circuit noted:

> Congress left the matter of *in camera* inspection to the discretion of the district court, without any indication of the extent of its proper use. The ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption.

*See also Hayden v. National Security Agency,* 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Given the discretion that Congress invested in the district courts in this matter, and the absence of

any indication that *in camera* inspection was to be required in any given set of circumstances, we decline to adopt the *per se* rule suggested by appellant in this case.

■ Appellant has raised several policy arguments in favor of the adoption of such a rule. Specifically, the Center argues that Exemption 5 cases pose unique problems of determining whether segregable factual portions exist within a document, and that without *in camera* review, a district court is unable to test the accuracy of agency affidavits. Indeed, we have recognized that the issue of "segregability is completely dependent on the actual content of the documents...." *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). For just such a reason, in reviewing a trial court's exercise of its discretion, we look to such factors as evidence of bad faith and the detail used in the *Vaughn* Index and affidavit to describe the contents of the documents. *See e.g., Allen v. CIA,* 636 F.2d 1287, 1298 (D.C.Cir. 1980). While persuasive policy arguments concerning checking the accuracy of agency affidavits may exist in this case, there remains the fundamental principle of saving judicial resources. The "segregability" requirement applies to all documents and all exemptions in the FOIA. If this Court were to adopt the *per se* rule suggested by appellant, we would be hard pressed not to extend the rule in future cases to the other exemptions. This result would be contrary to the intent of Congress. As we noted in *Weissman v. CIA,* 565 F.2d 692, 697 (D.C. Cir.1977) (footnotes omitted):

> In every FOIA case, there exists the possibility that Government affidavits claiming exemptions will be untruthful. Likewise, in every FOIA case it is possible that some bits of non-exempt material may be found among exempt material even after a thorough agency evaluation.

7. Recently, in *Founding Church of Scientology, Inc. v. Smith,* 721 F.2d 828 (D.C.Cir.1983), this Court held that "to the extent *Allen* conflicts with our subsequent decision in" *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir.1981) (en banc), "it no longer represents the law of this circuit." *Id.* at 830.

The conflict between the decisions in *Allen* and *Crooker* surrounded the proper interpretation and application of Exemption 2 of the FOIA. Exemption 2 is not at issue in this case, and neither *Founding Church* nor *Crooker* affect this Court's analysis of the *in camera* review issues in *Allen.*

If, as appellant argues these possibilities are enough automatically to trigger an *in camera* investigation, one will be required in every FOIA case. This is clearly not what Congress intended, nor what this Court has found to be necessary.

Even in the face of persuasive policy reasons to adopt a *per se* rule, as the Supreme Court recently recognized, "it is not our job to apply laws that have not yet been written." *Sony Corp. of America v. Universal City Studios, Inc.*, —— U.S. ——, ——, 104 S.Ct. 774, 796, 78 L.Ed.2d 574 (1984). In all FOIA cases, it is extremely difficult for any judge to have the necessary expertise to determine the propriety of the claimed exemptions. Such analysis requires conscientious judges and tremendous time and effort. However, until Congress acts to remove the clear grant of discretion expressed in the FOIA, or to relieve the tremendous burden on the trial judge, we are bound to interpret the law as written.

### THERE WAS NO ABUSE OF DISCRETION BY THE DISTRICT JUDGE IN THIS CASE

■ Given our conclusion that the decision on whether to grant a request for *in camera* inspection is within the discretion of the district court judge, our task is to determine whether the trial judge in this case abused that discretion. The Court below found that *in camera* review was not required "due to the detailed explanatory material promptly supplied by the EPA." J.A. 3. On the basis of a detailed affidavit submitted by Charles N. Freed and a detailed *Vaughn* Index, the Court granted summary judgment against the Center. We find that the trial judge acted properly in this case.

Congress did not mandate *in camera* inspection for any particular subset of FOIA cases—but "it has nevertheless made clear—by the concern reflected in the 1974 and 1976 Amendments for a thorough and

meaningful *de novo* review—that in certain cases, such inspection 'will plainly be necessary and appropriate.'" *Allen v. Central Intelligence Agency*, 636 F.2d 1287, 1297 (D.C.Cir.1980); H.R.Rep. No. 93–1380, 93d Cong., 2d Sess. 8, *reprinted in* [1974] U.S. Code Cong. & Admin.News at 6267. This Court has recognized that Congress "never isolated those instances" in which *in camera* inspection of requested documents is "plainly necessary." *Allen*, 636 F.2d at 1297. For that reason, we have previously outlined some of the considerations that trial courts should take into account in exercising their discretion.

In *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980), this Court noted that affidavits would be sufficient to justify summary judgment *without in camera inspection*, when they meet the following standard:

> [T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

*See also Holy Spirit Ass'n for the Unification of World Christianity v. Central Intelligence Agency*, 636 F.2d 838, 845 (D.C.Cir.1981), *vacated and remanded on other grounds*, 455 U.S. 997, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982); *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1112 (D.C.Cir.1983); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.1981).[8]

---

8. It should be noted that this standard, or similar standards have been widely adopted in other circuits. The Seventh Circuit in *Stein v. FBI*, 662 F.2d 1245, 1254 (7th Cir.1981) explicitly endorsed the initial use of a *Vaughn* Index as the sole basis of decision where the descriptions contained therein are "reasonably specific", the information as described "falls logically within

This Circuit has repeatedly held that "when the agency meets its burden [under the FOIA] by means of affidavits, *in camera* review is neither necessary nor appropriate." *Weissman v. CIA*, 565 F.2d 692, 696–97 (D.C.Cir.1977); *see also Ray v. Turner*, 587 F.2d at 1195. In *Brinton v. Department of State*, 636 F.2d 600 (D.C. Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981), this court reviewed a district court decision granting summary judgment to the State Department without acceding to Brinton's request for an *in camera* inspection. The District Court had found the State Department's affidavits to be sufficiently clear and detailed to establish the applicability of Exemption 5. The Court also found no allegations or evidence of agency bad faith. *See Brinton v. Department of State*, 476 F.Supp. 535, 538–43 (D.D.C.1979). This Court held:

> Because the Department affidavits made a detailed showing of the applicability of the deliberative process ground of Exemption 5, and since there is no contradictory evidence or evidence of Department bad faith, the district court was entirely correct in granting summary judgment without conducting an *in camera* inspection of the documents.

*Brinton*, 636 F.2d at 606; *see also Church of Scientology of California v. Department of Defense*, 611 F.2d 738, 742 (9th Cir.1979) ("If the agency supplies a reasonably detailed affidavit describing the document and facts sufficient to establish an exemption, then the district court need look no further in determining whether an exemption applies.").

Even the appellant admits that in this case "EPA filed detailed affidavits justifying the withholding, which, on their face, were logical and uncontradicted by anything else in the record." Brief of Plaintiff-Appellant at p. 21. Additionally, appellant admits that at the time the district

court made its determination on the need for *in camera* review, "there was no evidence of agency bad faith." *Id.* Our review of the EPA affidavit and the *Vaughn* Index convinces us likewise. "Reasonably specificity in affidavits connotes a quality of reliability." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir.1978). The EPA submissions to the trial court were sufficiently detailed and specific enough to withstand scrutiny. In addition to non-conclusory descriptions of documents in the *Vaughn* Index, the 23 page affidavit of Charles N. Freed provides a good summary description of the documents in general terms and the grounds for claiming exemptions. Indeed, the affidavit even describes what factual materials were withheld and why they could not be segregated. *See* Freed Affidavit at ¶ 26. Appellant relies principally on the case *Ash Grove Cement Co. v. FTC*, 511 F.2d 815 (D.C.Cir.1975). In that case, this Court held that the trial judge should inspect a random sample of the disputed documents because the initial decision had been based on "inadequate information" and "general descriptions" of the documents. *Id.* at 816, 817. The Court concluded that "in the absence of more specific document analysis by the agency, such a procedure was necessary to meet the requirement of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977 [94 S.Ct. 1564, 39 L.Ed.2d 873] (1974) that judicial determinations under the FOIA be based upon a detailed record." *Id.* at 817. Similarly, in *Allen v. CIA*, 636 F.2d 1287 (D.C.Cir.1980), we noted that one reason for ordering the trial judge to inspect documents was that "[t]he affidavits afford[ed] no basis for a conclusion that all reasonably segregable nonexempt portions of the document have been released" and did not even contain an assertion to that effect. *Id.* at 1294; *see also Holy Spirit*, 636 F.2d at 845 (*in camera* review needed

---

the claimed exemption", and there is no contrary evidence or "evidence of bad faith." *See also Brown v. FBI*, 658 F.2d 71, 74 (2d Cir.1981);

*Lame v. U.S. Department of Justice*, 654 F.2d 917, 921 (3rd Cir.1981); *Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir.1980).

**24**

when descriptions of the documents were primarily conclusory and often repeat the terms of the FOIA).

■ In contrast to those cases, we find the affidavit and *Vaughn* Index in this case to be non-conclusory and specific in their descriptions of the disputed documents. In the absence of agency bad faith at the time of the district court's decision,[9] and given the specificity of the EPA submissions and the absence of any other distinctive factor suggesting a need for *in camera* inspection in the present case,[10] the trial court did not abuse its discretion by refusing to proceed in that fashion.

■ Appellant claims that the legislative history of the FOIA indicates that the reliance on affidavits without *in camera* review was intended to be primarily utilized in the particularly sensitive area of national security matters covered by Exemption 1. Brief of Plaintiff-Appellant at p. 18. We do not agree. While preserving the confidentiality of national security documents was undoubtedly and understandably uppermost in the Congress' mind, there is no indication in the legislative history that the discretion given to the trial judge on the issue of *in camera* inspection was meant to be used solely, or even primarily, with regard to such documents. In fact, this Court has already noted that the *Allen/Hayden* standards for reviewing trial court discretion (developed in Exemption 1 cases) should be applied in Exemption 5 cases as well. In *Paisley v. CIA*, 712 F.2d

9. Appellant has claimed that comparison of documents released by Congress with the descriptions supplied to the District Court prior to their release shows that the Freed Affidavit and *Vaughn* Index are at variance with the actual contents of the documents. Specifically, appellant points to Document 25, a memorandum from Charles N. Freed to Samuel I. Gutter seeking views of the Office of General Counsel regarding the legality of an offset plan under the Clean Air Act. J.A. 41–43. Evidence that became available after the district court's decision can of course have no bearing upon whether that decision was an abuse of discretion. The latter determination must be made on the basis of the data then before the court. The new material which appellant presses upon our attention is, therefore, irrelevant to the issues presented in this appeal.

In any case, we have reviewed Document 25, and find that there is no basis to conclude that the agency's descriptions evidence bad faith. Most of the material appellant seeks to characterize as disclosable facts are really facts that if released, would have revealed the deliberative process that Exemption 5 is intended to protect. *See Montrose Chemical Corp. v. Train,* 491 F.2d 63, 68 (D.C.Cir.1974); *Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980). If there is a sentence or two that is both non-exempt and "reasonably" segregable, 5 U.S.C. § 552(b), *see Lead Industries Ass'n v. OSHA,* 610 F.2d 70, 86 (2d Cir.1979), that conclusion is not so obvious that the agency's failure to reach it can be said to be bad faith as opposed to simple error.

10. Appellant suggests judicial economy as such a factor. Appellant is correct in noting that the trial court, by looking at the documents *in camera,* would have looked at fewer pages than the *Vaughn* Index and affidavit combined. We conclude, however, that imposing a requirement of *in camera* inspection in a case such as this, would have far more reaching effects on judicial resources in future cases, and thus we decline to do so. Even assuming, however, that it would foster judicial economy to remand this case to the district court so that it might now pursue the more economical course, appellant's argument cannot be credited. Although the *Vaughn* Index and affidavit were longer, they covered all 53 documents originally at issue, not only the 19 for which *in camera* inspection was sought. Additionally, much of their content provided background information essential to the district court's decision which would not be evident from the withheld pages alone.

Appellant also raised the issue of the public interest in disclosure. It is beyond dispute that the FOIA was designed to bring about a more informed electorate. *See* H.R.Rep. No. 1497, 89th Cong., 2d Sess. 12 (1966), *reprinted in* U.S. Code Cong. & Admin.News [1966] at p. 2419. While there is always a public interest in disclosure, we conclude that the public interest here is insufficient to outweigh the presumption of agency regularity and the deference one must give to the agency in charge of insuring proper compliance with the pollution laws. *Compare Allen v. CIA,* 636 F.2d at 1300 (great public interest in determining whether CIA was frustrating investigation into or had a role in assassination of President Kennedy). There are no other factors to which appellants have pointed which suggest any reason for treating this case differently from any other Exemption 5 case.

686 (D.C.Cir.1983), both exemptions 1 and 5 were at issue. The Court noted:

> If the Government's affidavits fail to meet the standards of specificity set forth by this Court, *see Hayden v. Nat'l Security Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, [100 S.Ct. 2156, 64 L.Ed.2d 790] (1980) ... then the District Court should consider *in camera* inspection of the documents. *See ... Holy Spirit Ass'n for Unification of World Christianity v. CIA ...; Allen v. CIA ...* (considerations supporting *in camera* inspection).

*Paisley,* 712 F.2d at 700 n. 62. The trial judge in this case applied the appropriate standard in reaching his decision.

### CONCLUSION

The decision on whether to conduct *in camera* inspection of documents in FOIA cases is one addressed to the broad discretion of the trial judge. Upon review of the record in this case, we conclude that there was no abuse of that discretion, and that summary judgment in favor of the Appellee was appropriate on the facts of this case.

*Affirmed.*