**Debra H. FREEMAN**

v.

**U.S. DEPARTMENT OF JUSTICE.**

**Civ. No. HM–85–1992.**

United States District Court,
D. Maryland.

June 3, 1988.

Joseph N. Bowman, Fensterwald, Alcorn & Bowen, Arlington, Va., and Carlos M. Recio, Solomon, Foley, Sweeney & Moran, Rockville, Md., for plaintiff.

J. Frederick Motz, U.S. Atty., and Elizabeth H. Trimble, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

Plaintiff Debra H. Freeman ("Freeman") brings this action pursuant to the Federal Freedom of Information Act ("FOIA"), Title 5 U.S.C. Section 552, as amended October 27, 1986, Public Law 99–570, Sections 1801–1804. Freeman, a follower of Lyndon LaRouche ("LaRouche"), has campaigned unsuccessfully for public office as a candidate of the National Democratic Policy Committee, LaRouche's party. Plaintiff has been involved in four separate FBI investigations, about each of which she is requesting information. The FBI began two of the investigations in response to allegations that plaintiff made. The first began after plaintiff charged election irregularities in the 1978 Congressional Election for the Seventh Congressional District of Maryland. Baltimore File No. 56–214; FBI Headquarters ("FBIHQ") File No. 56–0.[1] The FBI initiated the second after plaintiff reported a death threat made to her during her 1982 campaign for Baltimore City Council President. Baltimore File No. 100–34326; FBIHQ File No. 100–487339.[2] Plaintiff was herself the subject of a third FBI investigation. In response to a series of articles published in *The Baltimore Sun*, the FBI investigated possible election law violations by the plaintiff during her campaign in the 1982 Maryland Congressional Primary Election. Baltimore File

1. The FBIHQ file is a general election law violation file, containing miscellaneous correspondence not related to any one individual or organization. One communication regarding Baltimore File No. 56–214 was located in it.

2. The FBIHQ file here, as in the following two cases, contains information derived from the Baltimore investigations.

No. 196B–901; FBIHQ No. 196–4108. Finally, plaintiff's name appeared in the FBI's investigation into subversive activities by the National Caucus League Committee ("NCLC"), an organization to which plaintiff belongs. Baltimore File No. 100–32336; FBIHQ File No. 100–482066. Each of these four investigations was closed, within a year from its opening, because of lack of evidence.

In a letter, dated April 24, 1985, to the Federal Bureau of Investigation's Baltimore Field Office, Freeman requested the following information, pursuant to Section 552(a)(3):

a. Any and all documents which reference or mention the requestor, Debra Hanania Freeman;

b. Any and all documents which reference or mention her campaign committee, "Citizens for Freeman";

c. Any and all documents pertaining to any investigation conducted by the Baltimore Field Office of the Federal Bureau of Investigation, including, but not limited to, correspondence with any federal, state, local governmental or private agency or with FBI Headquarters, which pertain to, mention, or in any way reference the requestor, her campaign committee or her election challenge to Representative Barbara Mikulski in 1982.

When she had received no response to this request in the ten days required by FOIA, § 552(a)(6), she filed the instant action against defendant United States Department of Justice ("DOJ").

Since the initiation of this lawsuit, the FBI has conducted the search of its files in Baltimore and at the FBIHQ and located 2,357 pages of information. The information was in either the four Baltimore files, the four FBIHQ files or four other Baltimore files in which Freeman's name was cross-referenced. These four other files were first, an investigation into a violation of 18 U.S.C. § 1951 by another individual, Baltimore File No. 194C–155, serial number 49; second, a control file which has miscellaneous correspondence regarding potential

violations of 18 U.S.C. § 1951, Baltimore File No. 194–0, sub E, serial numbers 34, 35A, 35F, 35P, 35S, and 35Z; third, a control file regarding violations of narcotics laws, Baltimore File No. 12–0, serial number 968; and fourth, a control file regarding domestic security, Baltimore File No. 100–0, serial number 22379. At this time, the agency has released in total 413 pages to the plaintiff, withheld 1,670 pages pursuant to a court order entered in the case of *LaRouche v. Kelley* in the Southern District of New York, and withheld or deleted information from 274 pages pursuant to five of the statutory exemptions from the disclosure requirements of FOIA.[3] The FBI released some of the material as a result of plaintiff's appeal to the Office of Legal Policy ("OLP") of the DOJ. OLP upheld the bulk of the agency's decision. On November 3, 1986, the FBI provided plaintiff and the court with the declaration ("Declaration") of Special Agent John Frederick Mencer as its *Vaughan* index, a listing of the various documents and the reasons for deletions or withholding. *Vaughan v. Rosen*, 484 F.2d 820, 826–828 (D.C.Cir.1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Pending before the Court are both plaintiff's and defendant's Motions for Summary Judgment. The parties agreed that the Court's ruling on the motions for summary judgment would be the final ruling in this case. September 2, 1986, Order of the Court, Paper No. 14. The Court conducted a hearing commencing at 10:00 A.M. on May 8, 1987. The Court has considered the arguments advanced at the hearing and in the memoranda submitted by the parties. The Court is now prepared to rule on portions of plaintiff's complaint, and will conduct an *in camera* review of others of the contested documents.

## THE FOIA STATUTE

■ The overriding purpose of the FOIA is to ensure that the public has access to agency records and information. Congress, mindful of the fact that disclo-

---

**3.** The FBI claims exemption to information pursuant to exemptions 552(b)(2), (b)(5), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The Court will address each one in its discussion, *infra.*

sure could in some situations hamper other legitimate governmental interests, wrote into the statute 9 exemptions. These exemptions are to be construed narrowly in favor of disclosure. *Spannaus v. United States Department of Justice*, 813 F.2d 1285, 1288 (4th Cir.1987); *J.P. Stevens Company v. Perry*, 710 F.2d 136, 139 (4th Cir.1983). In litigation, it is the agency which has the burden of demonstrating, for each identifiable document, that the document fits into one of the exemptions. *Spannaus, supra.*, at 1288; *Landfair v. Department of Army*, 645 F.Supp. 325, 327 (D.D.C.1986).

## IN CAMERA INSPECTION OF DOCUMENTS

■ This court must conduct a *de novo* review of the DOJ's decision to withhold this information. The statute neither mandates nor forbids that the court review the documents *in camera*. The decision to do so is within the discretion of the court. Section 552(a)(4)(B); [4] *Center for Auto Safety v. Environmental Protection Agency*, 731 F.2d 16, 20–21 (D.C.Cir.1984). However, this should only be done when the affidavits and other information submitted by the agency supporting its claim do not reveal sufficient information for the court to decide. *Center for Auto Safety, supra*, 731 F.2d at 20–21.[5] At the conclusion of the hearing in the instant case, the Court determined that it had sufficient information from the testimony and from the affidavits submitted by the government to make a determination on the claims of the parties with respect to the withholding of some documents and will exercise its discretion in favor of conducting an *in camera* review of other documents. The Court's reasoning follows.

**4.** Section 552(a)(4)(B) reads in relevant part: In such a case, the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld ...

**5.** This decision cites the Conference Report on the statute, which states:

## THE ADEQUACY OF THE SEARCH CONDUCTED BY THE FBI

■ The court will address this preliminary issue, raised by plaintiff in her Motion for Summary Judgment, before discussing the arguments by each side on the merits of the withholding claims. Plaintiff alleges that the FBI did not conduct an adequate search. The FBI must show that the search it conducted was a reasonable one. *Mary Jane Freeman v. United States Department of Justice*, [808 F.2d 834 (Table)] (4th Cir.1986); *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984), *rehearing denied* 763 F.2d 1436 (D.C.Cir.1985). To meet this burden of demonstrating the adequacy of its search, the agency may rely on "reasonably detailed, nonconclusory affidavits and declarations submitted in good faith." *Mary Jane Freeman*, Slip Opinion, at 5.

DOJ submitted to the Court the Declarations of John Frederick Mencer and Alfred A. Reginato, Supervisory Special Agents of the Freedom of Information—Privacy Acts Section, Records Management Division at FBI Headquarters, each Declaration describing in detail the FBI's filing system and the search method that the FBI used in the instant case. The Court concludes, after reading these Declarations, that the FBI conducted a thorough search of its files, more than adequate to satisfy the requirements of FOIA. Plaintiff argues that the search was inadequate because it neither revealed results of electronic surveillance nor of any interview with the Baltimore Sun reporter who wrote the articles about her. Supported only by her speculation that such things actually occurred, plaintiff's argument is unpersuasive. "[A] search is not unreasonable simply because it fails to produce all relevant material...." *Mary Jane Freeman, supra*, at p. 5 *quoting Meeropol v. Meese*, 790

Before the court orders *in camera* inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.
S.Conf.Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), U.S.Code Cong. & Admin.News 1974, pp. 6267, 6287–88.

F.2d 942, 952–953 (D.C.Cir.1986).[6] Accordingly, the Court will not grant plaintiff's Motion for Summary Judgment on the basis of the inadequacy of the search. Further, although defendant did not explicitly move for summary judgment on this issue, as the Court has found that the FBI's search was adequate, the Court will *sua sponte* grant judgment for DOJ on this issue.

## THE MERITS OF THE CLAIMS FOR WITHHOLDING

Because each party moves for summary judgment on each of these exemption claims, the court will address the motions jointly.

### *Exemption Because of Court Order*

■ Defendant has withheld 1,670 documents pursuant to an order ("the Order") of the United States District Court for the Southern District of New York, entered in the case of *Lyndon H. LaRouche, Jr. et al. v. Clarence M. Kelley et al.,* 75 Civil 6010 (MJL). The Order, entered on February 28, 1979 pursuant to a stipulation between the parties, reads:

1. Defendants and the Federal Bureau of Investigation ("the FBI") are enjoined from releasing to requesters under the Freedom of Information Act or the Privacy Act, and from making available to the public generally, other than plaintiffs herein, any of the documents in their possession, custody or control, production of which has been requested by plaintiffs herein pursuant to the Freedom of Information Act, except as provided by all terms of the Privacy Act save 5 U.S.C. Section 552a(b)(2).

Freeman counters with two arguments. First, she claims that, as a member of NCLC, which is one of the plaintiffs in the *LaRouche v. Kelley* case, she is one of the people entitled to receive the information. The FBI correctly responds that the appropriate forum in which to raise this argument is the Southern District of New York.

The Court will not enter an order that would place the FBI in the position of choosing which United States District Court to disobey. Plaintiff's second argument is that, because the Order refers to documents and not information, she is entitled to whatever information is segregable from the documents. The Court notes simply that a plain reading of the Order does not indicate any such distinction, and concludes that the Southern District of New York is also the appropriate forum to raise this issue. Accordingly, the Court will grant summary judgment for defendant on the documents withheld pursuant to the Order.

### *Exemption Pursuant to § 552(b)(2)*

■ Section 552(b)(2) of FOIA ("B2") exempts from disclosure all documents that are:

related solely to the internal personnel rules and practices of an agency.

DOJ argues that all it has deleted on the basis of this exemption is, on eight documents, the symbol numbers and letters used to identify confidential sources. DOJ correctly contends that these are strictly internal matters of the FBI, and thus not subject to disclosure. *Nix v. United States,* 572 F.2d 998, 1005 (4th Cir.1978). Plaintiff makes no argument on this exemption and did not respond to defendant's motion. Accordingly, the Court will grant the defendant's summary judgment motion on information withheld under this exemption.

### *Exemption Pursuant to § 552(b)(5)*

Section 552(b)(5) of FOIA ("B5") exempts all documents from disclosure that are:

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

This exemption protects "those documents, and only those documents, normally privi-

---

**6.** Plaintiff also complains that the FBI did not provide her with copies of the search slips it used or copies of the cross-reference cards. Production of this information might satisfy plaintiff that the search was adequate. However, it is the Court and not the plaintiff that

must be satisfied that DOJ's search was adequate. The failure to produce these bits of information does not persuade the Court that what appears to be an exhaustive search is not one.

leged in the civil discovery context." *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The privilege on which defendant has relied in withholding information on five documents is the deliberative process privilege. "This privilege serves the primary purpose of permitting agency decision-makers to engage in that frank exchange of opinions and recommendations necessary to the formulation of policy without being inhibited by fear of later public disclosure." *Paisley v. Central Intelligence Agency*, 712 F.2d 686, 697–698 (D.C.Cir.1983), *vacated in part*, 724 F.2d 201 (D.C.Cir.1984). This exemption is "tailor-made" for a law enforcement agency's or a prosecutor's review and assessment of evidence to determine whether to initiate a prosecution. *Fund for Constitutional Government v. National Archives and Records Service*, 485 F.Supp. 1, 13 (D.D.C.1978), *affirmed on other grounds*, 656 F.2d 856 (D.C.Cir. 1981).

 To be protected by this privilege, the agency has the burden of showing that the document first is pre-decisional, or antecedent to the adoption of agency policy, and second, exhibits the deliberative process by which policies are formulated. *Jordan v. United States Department of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978), *overruled on other grounds, Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051 (D.C.Cir.1981). Further, any factual material that is segregable from the deliberative document must also be disclosed. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 89–91, 93 S.Ct. 827, 836–38, 35 L.Ed.2d 119 (1973).

 Defendant argues that the information withheld on these documents relates to internal staff analyses, opinions and recommendations regarding prosecutorial decisions. Defendant further argues that the remaining factual information which has not been disclosed is so "inextricably intertwined" with the policy-making information that it is not segregable, and is thus exempt from disclosure. *Ryan v. Depart-*

*ment of Justice*, 617 F.2d 781, 790 (D.C.Cir. 1980); *Mead Data Central, Inc. v. U.S. Department of the Air Force*, 575 F.2d 932, 934–5 (D.C.Cir.1978).

Freeman does not challenge the fact that the documents are pre-decisional or deliberative. Plaintiff makes two other arguments. The first is based on the decision in *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854 (D.C. Cir.1980). The court in that opinion outlines several possible criteria for determining if a document is pre-decisional or not. The court then goes on to state that "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal, supra*, 617 F.2d at 866. Plaintiff's argument is, essentially, that, because the information in these documents was used to arrive at a decision not to prosecute, these documents were adopted as the DOJ's decision. The court finds that plaintiff reads too much into the *Coastal* court's language. The *Coastal* opinion refers to documents that *are themselves* later adopted as documents that express a policy or decision, and not all documents *leading to* a policy or decision that is subsequently adopted. Plaintiff's reading of the language in the *Coastal* opinion in that manner would render B5 meaningless in the context of the deliberative process privilege.

Plaintiff next argues that DOJ has not met its burden of showing that the factual information is so "inextricably intertwined" that it can not be segregated and disclosed to her. The court has reviewed the Declaration and concludes that the Declaration does not provide enough information for the Court to determine whether the information was correctly withheld. The Court will therefore conduct an *in camera* review of the documents with information deleted according to this exemption before making its determination.

*Exemption Pursuant to § 552(b)(7)* [7]

Section 552(b)(7) ("B7") of FOIA exempts from disclosure all documents that are:

---

**7.** This section of FOIA is the only one before the Court affected by the 1986 amendments. Sec-

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ...

. . . . .

(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

(D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,

. . . . .

(F) could reasonably be expected to endanger the life or physical safety of any individual.[8]

Plaintiff's argument is that of the Circuit Court for the District of Columbia, which holds that, under this section of FOIA, defendant must first make a two-fold threshhold showing, and then must show that the document fits into one of the six sub-sections. *Pratt v. Webster*, 673 F.2d 408, 414 (D.C.Cir.1982); *see also Binion v.*

*United States Department of Justice*, 695 F.2d 1189, 1194 (9th Cir.1983); *Ferri v. Bell*, 645 F.2d 1213, 1223 (3rd Cir.1981), *modified* 671 F.2d 769 (3rd Cir.1982). The threshold showing is that, first, the documents must have arisen from investigatory activities that are "related to the enforcement of federal laws or to the maintenance of national security", *Pratt, supra,* 673 F.2d at 420, and second, that "nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least "a colorable claim" of its rationality." *Pratt, supra,* 673 F.2d at 421. If the documents were compiled for a purpose other than a legitimate law enforcement purpose, an agency would not be able to withhold such documents even if the information they contained fell into one of the six B7 sub-categories.

Defendant argues that all FBI records *per se* satisfy the threshhold requirement. Information on documents is therefore exempt from disclosure when it falls into one of the six sub-categories, even if the investigation was groundless, taken in bad faith or illegal. This *per se* rule has been adopted by several circuits. *Williams v. FBI*, 730 F.2d 882, 884–886 (2d Cir.1984); *Kuehnert v. FBI*, 620 F.2d 662, 668 (8th Cir.1980); *Irons v. Bell*, 596 F.2d 468, 472–476 (1st Cir.1978).[9]

The Court has reviewed the above cases, as well as others cited by the

---

tion 1804(a) of Public Law 99–570 expressly provides that the amendments apply to all civil actions pending as of the date of enactment, October 27, 1986.

The prior B7, under which virtually all of the cases cited by the parties and the Court were decided, exempted:

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, ... (F) endanger the life or physical safety of law enforcement personnel; ...

**8.** The other three exemptions under b(7) are:
(A) could reasonably be expected to interfere with enforcement proceedings,
(B) would deprive a person of a right to a fair trial or an impartial adjudication,

. . . . .

(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, ...

**9.** The Court notes that all of these cases were decided before the change in language of B7. The statute initially exempted "investigatory records compiled for law enforcement purposes", and now exempts "records or information compiled for law enforcement purposes."

parties, and determines that the reasoning of the Courts of Appeal for the District of Columbia and for the Ninth Circuit is the correct rule. Nothing in the language of the statute leads to the conclusion that Congress intended criminal law enforcement agencies to have a separate standard than the one imposed on agencies with mixed enforcement and regulation functions.[10] As noted above, Congress amended FOIA in October of 1986, and did not at that time establish a separate standard for law enforcement agencies, nor did it include the *per se* rule adopted by several Circuits and urged by defendant. Accordingly, the Court now adopts the reasoning of the Court of Appeals for the District of Columbia in the case of *Pratt v. Webster,* and holds that before the FBI can withhold information, it must first demonstrate that the files were generated during legitimate law enforcement activity.[11] The Court notes that courts will address claims by law enforcement agencies that its records were for law enforcement purposes more deferentially than it will address such claims by agencies with "mixed" enforcement and regulation functions. *Pratt, supra,* 673 F.2d at 418; *Wilkinson v. FBI,* 633 F.Supp. 336, 342 (C.D.Cal.1986).

■■■ Turning to the case immediately in front of it, the court concludes that defendant has made the requisite threshhold showing in this case with respect to three of the four investigative files, Baltimore File Nos. 196B–901, 56–214, and 100–34326. The Declaration sets out with specificity that these three files were opened in response to allegations of potential violations of specific federal criminal laws. The Declaration further discusses the result of the

investigation, closed in each case for lack of evidence, and the date it was closed. Further, the Declaration states with specificity the reason each investigation was initiated. DOJ has thus shown that the documents were generated in investigations related to federal law enforcement activities, and that there was a nexus between the potential enforcement and the information received. With respect to the fourth file, Baltimore File No. 100–32336, the file on NCLC in which the plaintiff's name appeared, the Court finds that the Declaration does not enable the Court to determine whether the threshhold requirement was met. The Court finds that it must therefore conduct an *in camera* review of this file in some form to make this determination. The Court will address the form that this review will take below.

The court must next address the issue of whether the documents fit into the specific categories. In plaintiff's Motion for Summary Judgment, in the section entitled EXEMPTION 7 CLAIM, she has only a subsection entitled EXEMPTION B7C, and does not address B7D or B7F. However, parts of her argument could be construed as addressing B7D, so the Court will discuss this exemption. Plaintiff makes no challenge to the deletion of the name of one DEA agent, Baltimore File No. 12–0, so the Court will grant summary judgment for defendant on information withheld according to this exemption.[12]

a. *Exemption B7C*

■■■ DOJ withheld, under this exemption:

1. names and initials of FBI employees;

---

**10.** As Congress did establish a separate criteria for law enforcement agencies in B7D, the Court concludes that the failure to do so for B7 as a whole was intentional.

**11.** The Court finds the reasoning in the *Irons v. Bell,* 596 F.2d 468 (1st Cir.1978), and *Williams v. FBI,* 730 F.2d 882 (2d Cir.1984), decisions persuasive. Both Courts point to the fact that Congress amended B7 in 1974 to remedy the perceived problem that courts were permitting virtually no disclosure of FBI files. Citing legislative history, the courts in *Irons* and *Williams* conclude that Congress could not have intended

to have the confidentiality of informants dependent on an after-the-fact determination by a court of the legality of an investigation. *Irons, supra,* 596 F.2d at 471–76; *Williams, supra,* 730 F.2d at 884–86. Had Congress not amended the statute in 1986 without adopting a *per se* rule, the Court would come to the same conclusion as those two courts.

**12.** All that DOJ withheld under this exemption was the name of one DEA agent on one document. Baltimore File No. 12–0.

2. the identities of other federal employees;

3. names and identifying data of cooperating non-federal law enforcement officers;

4. names and identifying data of those who provided information they had because of their employment;

5. names and identifying data of those mentioned in FBI investigative files;

6. names and identifying data of those in whom the FBI has an investigative interest; and

7. names, identifying data, and personal information of those who provided information to the FBI, including contributors to Freeman's campaign who spoke with the FBI.

Plaintiff makes no argument with respect to categories 1 through 4 or category 6 as listed above. Her sole interest seems to be getting the names, identifying data, and other personal information about the contributors to her campaign, the information withheld in categories 5 and 7 above. The Court will grant defendant's motion for summary judgment on the information in categories 1 through 4 and category 6.[13]

■ For this exemption, the Court must determine whether the individual's right to privacy outweighs the public interest in the revelation of this information such that the invasion of privacy would be unwarranted. *Deering Milliken Inc. v. Irving*, 548 F.2d 1131, 1136 (4th Cir.1977); *Fund for Constitutional Government, supra*, 656 F.2d at 862. The public interest in the revelation of the information is twofold. First, there is the overriding interest in keeping the operation of the government open. Second, there is the public interest in keeping information about political campaigns in particular free and available to any member of the public. These are both, in the court's view, significant interests and are not to be easily outweighed.

However, the public interest in releasing this information in this particular matter to this particular plaintiff is not strong. Freeman most wants the names of contributors to her campaign that were later interviewed by the FBI in its investigation into possible election fraud by the plaintiff. The Court notes that the FBI got information only from those on the list of contributors filed by Freeman with the Federal Election Commission. Freeman therefore has the means of contacting these contributors herself to inquire whether they spoke with the FBI, and if so, what they said. From its review of the file with deletions the Court notes that many of these people were reluctant to speak with the FBI. The public also has an interest in assuring the free flow of information to the FBI. *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977). The assurances of privacy to informants and those interviewed enables the FBI to gather the information it needs. This type of information is particularly important when the FBI is investigating such sensitive matters as elections law violations. Several courts have determined under B7C that revealing the names of those who have given information to federal law enforcement officials would constitute an unwarranted invasion of privacy. *Nix, supra*, 572 F.2d at 1006; *L & C Marine Transport, Inc. v. United States*, 740 F.2d 919, 922–3 (11th Cir.1984); *Kiraly v. FBI*, 728 F.2d 273, 279–80 (6th Cir.1984); *New England Apple Council v. Donovan*, 725 F.2d 139, 144–5 (1st Cir.1984); *White v. I.R.S.*, 707 F.2d 897, 901–2 (6th Cir.1983);

---

**13.** All of the information in these categories has been held to be protected by B7C. *See, e.g. Nix, supra*, 572 F.2d at 1006; *New England Apple Council, Inc. v. Donovan*, 725 F.2d 139, 142–4 (1st Cir.1984); *Ingle v. Department of Justice*, 698 F.2d 259, 269 (6th Cir.1983); *Miller v. Bell*, 661 F.2d 623, 630 (7th Cir.1981), *cert. denied sub nom. Miller v. Webster*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Bast v. United States Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1980); *Fund for Constitutional Government, supra*, 656 F.2d at 865–6; *Baez v.*

*United States Department of Justice*, 647 F.2d 1328, 1338 (D.C.Cir.1980). The Court notes that, where a page has been released, DOJ's deletions have been predominantly of names alone. Where DOJ has deleted whole paragraphs or pages, the Court is conducting *in camera* review. Even though the Court now rules in favor of defendant DOJ on the information in these categories, should the Court determine after its review that this information was not properly withheld, it will order its release.

*Lesar v. United States Department of Justice,* 636 F.2d 472, 487–8 (D.C.Cir.1980); *Scherer v. Kelley,* 584 F.2d 170, 176 (7th Cir.1978) *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979). Courts have also held that the public disclosure of even the fact of being mentioned in a criminal investigatory file creates a stigma for the innocent individual, and that this privacy interest outweighs the public interest in disclosure. *Miller v. Bell,* 661 F.2d 623, 631–32 (7th Cir.1981), *cert. denied sub nom. Miller v. Webster,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Maroscia, supra,* 569 F.2d at 1002. The Court determines that, on balance, the revelation of names of people interviewed by the FBI, and any identifying information, could reasonably be expected to constitute an unwarranted invasion of privacy. The Court finds that, where whole pages and whole paragraphs have been deleted, the Declaration does not provide enough information to determine whether parts of this information could be released. The Court will therefore conduct *in camera* review to make this determination.

Plaintiff's reliance on the case of *Congressional News Syndicate v. United States Department of Justice,* 438 F.Supp. 538 (D.D.C.1977), in which the District Court released the list, compiled by DOJ, of contributors to a covert political action committee, is misplaced. In this case, all that was released was a list of names of the contributors, who were themselves suspected of violating the Federal Corrupt Practices Act. In this case, Freeman already has the list of contributors. She wrote it. She wants instead to know which ones provided information to the FBI, and what that information was. The information she requests is of a significantly different nature, and would create a much greater invasion of privacy, than the list of names produced in the *Congressional News* case.

b. *Exemption Pursuant to B7D*

██ Under this exemption, unlike under exemption B7C, the Court conducts no balancing test. The Court instead determines whether the information was received un-der an express or implied promise of confidentiality. *Deering, supra,* 548 F.2d at 1137; *Shaw v. FBI,* 749 F.2d 58, 61 (D.C. Cir.1984). Again, the Court finds that where whole pages and whole paragraphs have been deleted, the Declaration does not adequately provide the Court with the information it needs to determine if all of the information is properly withheld. The Court will conduct an *in camera* review, as discussed below.

## IN CAMERA REVIEW

In order to determine whether Baltimore File No. 100–32336 satisfies the threshhold requirement of B7, the Court will review serial numbers 1 through 89 of this file, the first portion. The Court notes that most of this file has been withheld pursuant to the Order. As stated above, the Court will not order disclosure of any of this information, but feels it must review the file to see if the information withheld pursuant to B7C and B7D on the few documents released was correctly withheld.

With respect to the other files, the Court will conduct *in camera* review of the following documents:

FBIHQ File No. 56–0
Serial No. 4538
Baltimore File No. 100–34326
Serial Nos. 4 enclosures and 7 enclosures
FBIHQ File No. 100–487339
Serial No. 2
Baltimore File No. 196B–901
Serial Nos. 17 pp. 3–12; 36; 41; 52; 53; 56; 67; 68; 69; 81; 84; 85; 93; 96; 97 enclosures; 98; 99; 104; 105; 106; 118; 127; 130; 131; 132; 134; 136; 137; 139; 141; 142; 144; 145; 148; 152; 153; 154; 157; 159; pp. 1 and 2; 163; 164; 172 pp. 1–4; 174; 180; 184; and 1A1 through 48, except 1A25
FBIHQ File No. 196–4108
Serial Nos. 6; 7; 8X pp. D–1 and 2, pp. E–1 – E–9, 1–78; and 10
FBIHQ File No. 194C–155
Serial No. 49 pp. 1 and 2
FBIHQ File No. 100–0
Serial No. 22379

The Court will not conduct *in camera* review of any documents in Baltimore File No. 56–214, FBIHQ File No. 100–482066, Baltimore File No. 194–0, or Baltimore File No. 12–0.

The Court will incorporate its rulings in a separate Order.

The Court will order that DOJ submit these documents to the Court within thirty (30) days from the signing of this Order.