**Thomas D. POWELL, Appellant,**

v.

**UNITED STATES BUREAU OF PRISONS, Appellee.**

**No. 89–5446.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1991.

Decided March 15, 1991.

Thomas D. Powell, pro se.

William H. Penniman, Washington, D.C. (appointed by the Court), for amicus curiae on behalf of appellant urging that there be a fully informed decision.

Michael L. Martinez, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before WALD, BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Dissenting opinion filed by Circuit Judge SENTELLE.

WALD, Circuit Judge:

Thomas Powell appeals from a district court decision granting the Bureau of Prisons' motion for summary judgment and adopting a magistrate's recommendation that Powell's Freedom of Information Act request for disclosure of the "Central Inmate Monitoring Manual" be denied. Events subsequent to the district court's decision cast doubt on that court's finding concerning the "segregability" of the requested document. Accordingly, we remand this matter to the district court for further consideration in light of these new developments.

## I. BACKGROUND

The Bureau of Prisons ("Bureau") maintains a "Central Inmate Monitoring" ("CIM") program which establishes special procedures designed, in the words of a Bureau official, "to monitor and control the transfer, temporary release and community-based activities of certain inmates who present special concerns for management." These inmates include persons who due to "their prior record, previous community oc-

cupation, known behavior or offense characteristics" are "vulnerable to confrontation, assault or retaliation." In late 1988, Powell, then an inmate in the CIM program, submitted to the Bureau a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking disclosure of, *inter alia,* the Central Inmate Monitoring Manual. According to a declaration by a Bureau official (the "Katsel Declaration"), the Manual contains "[d]etailed instructions for the implementation of the Central Inmate Monitoring System." In response, the Bureau released only a public "program statement" and claimed that the Manual itself was, in its entirety, exempt from disclosure under 5 U.S.C. § 552(b)(2)—the so-called FOIA "Exemption 2"—which exempts from disclosure documents "related solely to the internal personnel rules and practices of an agency."

Powell subsequently filed suit *pro se* and *in forma pauperis* in the District Court for the District of Columbia, seeking review of the Bureau's decision. The matter was referred to a federal magistrate, who reviewed the Bureau's motion for summary judgment and filed a report and recommendation. Based on the Katsel Declaration, which addressed the function of the CIM program and the contents of the Manual, the magistrate concluded that the material was exempt under Exemption 2. More precisely, she found that the Manual passed the 2-prong test set forth in *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir.1981) (*en banc*), which asks (1) whether the document is "predominantly internal" and (2) whether disclosure would significantly risk circumvention of the law or agency regulations.

Powell then filed an objection to the magistrate's report, stating only that he "objects to the entire Report and Recomendation [sic] of the Magistrate and requests the District Judge to conduct a *de novo* review of the proceedings." The district court noted that Powell's objection had not complied with Local Rule 504(b), which requires that "objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made," and accordingly reviewed the magistrate's report only for clear error. Finding no such error, the district court issued an order adopting the Magistrate's recommendation.

Powell appealed, and this court subsequently appointed an *amicus curiae* to prepare briefs and to argue in support of Powell.[1] *Amicus* brought to this court's attention the fact that the Bureau, in the context of another FOIA action, had in fact already released portions of the Manual. *See Oliva v. Bureau of Prisons,* No. 84 Civ. 5741 (JFK) (S.D.N.Y.1986), 1986 WL 2959. Upon notification of this fact, the Bureau disclosed most of these same portions of the Manual to Powell, the *amicus,* and this court.[2]

## II. ANALYSIS

Powell first argues that the district court erred in employing a clear-error standard to review the magistrate's report and contends that the court should have reviewed that report *de novo.* The district court used a clear-error standard because it found that Powell had failed to comply with Local Rule 504(b),[3] which requires that objections to magistrates' reports be specifically stated. Although he acknowledges that, in most cases, Powell's generic

1. The court thanks Mr. Penniman for his able assistance as *amicus curiae* in this appeal.

2. In *Oliva,* the district court ordered the Bureau to release Chapter 2, most of Chapter 3, and section 1000 of the Manual. In this case, the Bureau has released the first two items, but refused to release section 1000.

3. Local Rule 504(b) provides:
Any party may file written objections to the magistrate's proposed findings and recom-

mendations issued under paragraph (a) within ten days after being served with a copy thereof. The objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection.
*Cf.* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [magistrate's] report or specified proposed findings or recommendations to which objection is made.").

objections would fail to satisfy the local rule, the *amicus* contends that, under the particular circumstances of the case before us, the district court's restrictive standard of review was in error.

The *amicus* emphasizes three conditions militating in favor of a *de novo* standard of review by the district court. First, he notes that the magistrate's report was brief (five pages) and focused on a single issue—the wholly exempt status of one 119–page document. Given the narrow focus of the report, he contends, the use of a general objection in no way undermines the purpose of the local rule in focusing the district court's attention on the core of the dispute. Moreover, the *amicus* reminds us, the pleadings of a *pro se* petitioner (here a prisoner at the time) are to be read with generosity. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Finally, the *amicus* maintains that Powell (like most FOIA requesters) operated at a disadvantage in filing his objection: he knew only what the affidavit said about the actual contents of the document and thus was in no position to offer anything more than the most general objections to the magistrate's report.

■ Powell's excuse has some appeal, but we need not decide at this time the merits of this claim (or even Powell's ultimate challenge to the magistrate's application of the *Crooker* test). Instead, because the release of portions of the Manual after the docketing of this appeal has called into serious question the adequacy of the magistrate's findings (as adopted by the district court) about the segregability of the Man-

ual, we remand this case to the district court for further findings on that issue.

The FOIA requires that "[a]ny *reasonably segregable* portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b) (emphasis supplied). Accordingly, this court has long recognized that agencies and courts are obliged to determine whether nonexempt material can reasonably be segregated from exempt material. *See, e.g., Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 259–62 (D.C.Cir. 1977). In this case, the magistrate never made an express finding as to segregability but rather simply noted with approval that the "[d]efendant avers that meaningful segregation of the material in the Manual is not feasible." We have some doubt whether that statement satisfies the lower court's duty under the FOIA.[4] But in any case, we find that the issue of segregability must be reconsidered because the defendant's averment itself (on which the magistrate relied) has been shown to be infirm, and thus cannot provide a sufficient basis for a finding of nonsegregability.[5]

The Katsel declaration is infirm in at least two ways. First, although in this action the Bureau contends that the entire Manual is exempt from FOIA disclosure, the Bureau has, in earlier litigation, "conceded that Chapter 2 [of the Manual] does not qualify for exemption from disclosure." *Oliva,* 1986 WL at 2959. Moreover, as the subsequent release of substantial portions of the Manual demonstrates, some segregation of the Manual *is* "feasible"—contrary to the Bureau's blanket statement that it was not.[6] In the light of this new evidence,

---

4. *Cf. Church of Scientology v. Department of the Army,* 611 F.2d 738, 744 (9th Cir.1979) ("[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.").

5. *Cf. Military Audit Project v. Casey,* 656 F.2d 724 (D.C.Cir.1981):

   [I]t is now well established that summary judgment on the basis of such agency affidavits is warranted if the affidavits describe the documents and the justifications ... with reasonably specific detail, demonstrate that the information ... logically falls within the

claimed exemption and *are not controverted by either contrary evidence in the record* nor by evidence of agency bad faith. *Id.* at 738 (emphasis supplied).

6. The Bureau's discretionary disclosure of excerpts of Chapter 3 of the Manual, *see Oliva,* 1986 WL at 2959, also casts doubt on the accuracy of certain claims in the Katsel Declaration—for example, the assertion that "whether separately or pieced together ... it is of the utmost importance that the information [in the Manual] not be disclosed." However, because we remand this matter for further proceedings, we need not assess the district court's ultimate de-

the district court's segregability analysis must be revisited and we remand this matter to the district court for reconsideration.[7]

■ We recognize, of course, that this court is not required to consider evidence not contained in the record. *See Goland v. Central Intelligence Agency,* 607 F.2d 339, 370–71 (D.C.Cir.1978) (reh'g), *cert. denied,* 445 U.S. 927, 100.S.Ct. 1312, 63 L.Ed.2d 759 (1980). However, in this case, several unusual circumstances militate in favor of such consideration and ultimately in favor of a remand. First, the *Oliva* decision, citation of which prompted the Bureau to release portions of the Manual in this case, was only available through a computerized research service. This fact is particularly significant because the appellant was, until recently, a federal prisoner and a *pro se*

litigant with limited access to legal materials. Second, although in many cases a party uncovering new evidence may seek relief in the district court pursuant to Fed. R.Civ.P. 60(b),[8] such relief appears, in this case, to be time-barred. Indeed, the filing period for Rule 60(b) motions had run even before the Bureau released portions of the Manual (and thus cast doubt on its segregability claims). Finally, and most significantly, the Bureau's release of segregated portions of the document "go[es] to the heart of the contested issue"—namely, the segregability of the Manual.[9] *In re AOV Industries, Inc.,* 797 F.2d 1004, 1013 (D.C. Cir.1986). In sum, given the equities involved and the extraordinary circumstances presented in this case, "[w]e believe that a remand ... will best serve the interests of justice and fairness" and the purposes of the FOIA.[10] *Id.*

termination that, based on the Katsel Declaration, the entire Manual was exempt from disclosure under the FOIA.

7. *See In re AOV Industries, Inc.,* 797 F.2d 1004, 1013 (D.C.Cir.1986) ("[D]etermining the significance of the new evidence requires factual inquiries, a duty strictly within the province of the district court.").

8. That rule provides, in relevant part:
On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial.... [Such] motion shall be made ... *not more than one year* after the judgment, order or proceeding was entered or taken.
Fed.R.Civ.P. 60(b) (emphasis supplied).

9. Thus this case differs from *Goland v. Central Intelligence Agency,* 607 F.2d 339 (D.C.Cir.), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), upon which the dissent relies heavily. In *Goland,* an initial opinion by this court affirmed a district court finding that the CIA had conducted a thorough search in response to a FOIA request. After that opinion was released, the CIA revealed that it had uncovered additional documents. On rehearing, this court declined to vacate its initial judgment, stating that the subsequent discovery of documents was "not inconsistent with ... [its initial finding] that the search was thorough." *Id.* at 372. In this case, however, the release of segregated portions of the Manual clearly *is* inconsistent with the Bureau's claim (and the district court's implication) that the Manual was not segregable.

Our dissenting colleague's reliance on *Center for Auto Safety v. EPA,* 731 F.2d 16 (D.C.Cir. 1984), seems similarly misplaced. In that case, this court reviewed, under an abuse-of-discretion standard, a district court's decision not to undertake *in camera* review of the contested documents. Although Congress subsequently released some of the documents, this court refused to reverse the district court's decision and emphasized that Congress granted trial judges broad discretion in their use of *in camera* review. In so doing, the court noted that "[e]vidence that became available after the district court's decision can of course have no bearing upon whether that decision was an *abuse of discretion.*" *Id.* at 24 n. 9 (emphasis supplied). In this case we review not a trial court's exercise of discretion but rather its substantive determination of segregability, pursuant to the FOIA. Although a *discretionary* decision "must be made on the basis of the data then before the court," *id.,* the substantive soundness of a factual determination required by statute may, in certain circumstances, be called into question by subsequent events.
Moreover, in both *Goland* and *Center for Auto Safety* the "new evidence" was reconcilable with the district court's findings—that, in *Goland,* the CIA had conducted a thorough search, and that, in *Center for Auto Safety,* the trial court did not abuse its discretion. In this case, the intervening events directly contradict the Bureau's affidavit: if the Manual is not segregable, how did the Bureau segregate it?

10. "[Any] court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment ... and may remand the cause ... as may be just under the circumstances." 28 U.S.C. § 2106.

We note as well that in this case the question of segregability cannot be wholly divorced from the question whether the remainder of the document is exempt from disclosure under Exemption 2. On remand, the Bureau may, of course, disclose more of the segregated document, or provide additional evidence concerning segregability, or the district court, in light of the disclosure of portions of the Manual, may decide to perform an *in camera* review. Only then will it be appropriate for that court to make its final determination on whether, under *Crooker*, the undisclosed portions of the Manual are "predominantly internal" and whether disclosure would significantly risk circumvention of the law. Accordingly, it would be premature for us as well to reach and review the substantive determinations of the district court on the applicability of Exemption 2.

*It is so ordered.*

SENTELLE, Circuit Judge, dissenting:

While I agree with the majority that the Bureau of Prison's recent release of chapters two and three of the CIM Manual is relevant to a factual evaluation of the veracity of the Katsel affidavit on which the magistrate's report relies, I believe that it is inappropriate for this Court to make such a factual determination. The majority appears to disregard the fact that appellate courts do not generally consider new evidence in reviewing a lower court's determination. The majority recognizes that determining the significance of the new evidence is " 'strictly within the province of the district court,' " Maj.Op. at 1243 n. 7 (quoting *In re AOV Industries, Inc.*, 797 F.2d 1004, 1013 (D.C.Cir.1986)), but then goes on to find, based on its own factual determination, that the new evidence in this case warrants a remand to the district court. *See* Maj.Op. at 1242.

It is true that this Court has previously remanded a case to the district court where equitable circumstances required that new evidence be taken into account. In *In re AOV Industries, Inc., supra*, a creditor objected to fees awarded to the law firm of a Chapter 11 debtor, arguing that the law

firm had ineffectively represented the debtor's interests due to a conflict of interests. Between the time of the district court fee award and the appeal, time sheets had been discovered that reflected the "true scope of the overlapping representation." *Id.* at 1012. Faced with this new information, this Court remanded the case to the district court for reconsideration of the fee award in light of these new time sheets. The Court noted that "[n]ormally, ... we are not required to consider evidence presented for the first time on appeal." *Id.* (citation omitted). It also noted, however, that courts of appeal have limited discretion to make exceptions to that rule when " 'injustice might otherwise result.' " *Id.* (quoting *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). The Court emphasized the numerous third party interests at stake in the proceeding, as well as the bankruptcy court's role as a court of equity. *Id.* at 1012–13. Given that the time sheets were critical to determination of the issue, the Court found that "it would be inconsistent with this court's own equitable obligations, and its supervisory role in reviewing other courts in equity, to pretend that they do not exist." *Id.* at 1013. Accordingly, since district courts are the proper place for consideration of evidence, the Court remanded the case for the district court to reconsider the question of overlapping representation in light of the new evidence. *Id.*

In the present case, however, we lack the equitable context that required resolution in *AOV Industries*. Instead, we are dealing with a single individual's request for documents; one that has no effects on third parties, and that has statutory, rather than equitable, origins. Unlike the majority in this case, I believe the equitable context to be the critical factor in *AOV Industries*. It is not dispositive under *AOV Industries* that the new evidence in this case was arguably inconsistent with the BOP's original claim. This Court addressed that issue in *Center for Auto Safety v. Environmental Protection Agency*, 731 F.2d 16 (D.C.Cir.1984). In that case, the trial court granted summary judgment for the government on a FOIA claim, basing its decision

on the Environmental Protection Agency's affidavits claiming that the documents requested were exempt. Following the trial court's decision, Congress made public four of the requested documents. On appeal, the appellants argued that the comparison between the documents released and the agency's affidavits showed that the affidavits were inaccurate. In rejecting this claim, the Court stated,

> Evidence that became available after the district court's decision can of course have no bearing upon whether that decision was an abuse of discretion. The latter determination must be made on the basis of the data then before the court. The new material which appellant presses upon our attention is, therefore, irrelevant to the issues presented in this appeal.

731 F.2d at 24 n. 9. The Court went on to note in dicta that the appellants' claims fell short of a sufficient showing of agency bad faith. However, the Court's decision to reject the appellants' claims clearly rested on the inappropriateness of considering new evidence. Thus, contrary to the majority's characterization, it does not matter that the new evidence presented in this case may be "inconsistent" with the BOP's original claim, since it is simply irrelevant.

This Court reached a similar conclusion in *Goland v. CIA*, 607 F.2d 339 (D.C.Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Like *AOV Industries* and *Center for Auto Safety*, *Goland* dealt with the discovery of new materials between the time of the district court decision and the appeal. The district court in *Goland* granted summary judgment for the CIA on a FOIA claim, and this Court affirmed, finding that the CIA had made adequate efforts to locate documents responsive to the FOIA request. Following the district court decision and the filing of the appeal, but pending review, the CIA discovered hundreds of new documents that responded to the FOIA request. After the discovery, the CIA spent four weeks examining the documents, then, a week after the appellate opinion was released, informed the Justice Department of the existence of those documents. *Id.* at 367.

The appellants argued that the discovery of new relevant documents impugned the integrity of the CIA affidavits on which the Court had relied to find that the CIA had made reasonable efforts to locate the requested documents. The Court noted that "[a]ppellate review is ordinarily unaffected by matters not contained in the record." *Id.* at 370 (footnote omitted). The Court recognized that there are exceptions to this rule, including 1) an intervening change in the law; 2) changed circumstances that render the controversy moot; 3) changed circumstances that alter the appropriateness of injunctive relief; and 4) "in limited cases, facts which may be judicially noticed," *id.* at 370 n. 7 (citing *Landy v. FDIC*, 486 F.2d 139, 150–51 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (taking notice of the changing circumstances of the litigation itself)). However, the Court found that the new documents fit within none of these exceptions: "The fact that additional documents exist, insofar as it is probative of the thoroughness *vel non* of the search, is rather plainly 'newly discovered evidence.'" *Goland*, 607 F.2d at 370. The Court noted that it had found no appellate or Supreme Court decisions vacating an opinion on newly discovered evidence, for the reason that "an appellate opinion is based on the record before it, and hence cannot be set aside on the basis of newly discovered facts outside the record." *Id.* (footnote omitted).

If new evidence is discovered, the Court stated, the appropriate route for the parties would be to move for relief from the judgment of the district court under Fed.R.Civ. Pro. 60(b) (allowing court to relieve party of a final judgment, upon motion of the party, for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)"). This procedure allows a party to account for new evidence, but maintains that evidence within the province of the district court. *Cf. Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (appellate leave not

required for district court to rule on Rule 60(b) motion).

Like the majority in this case, the *Goland* Court also addressed the adequacy of its holding if relief under Rule 60(b) were foreclosed. However, the *Goland* Court held that, even where Rule 60(b)'s one-year limitation barred its application, it would be inappropriate for the Court to remand the case for the district court to consider the new evidence absent extraordinary circumstances. Although the Court found that it had fairly broad revisory power under 28 U.S.C. § 2106 (authorizing appellate courts to affirm, modify, vacate, set aside or reverse any judgments lawfully before them), it found that such power should be exercised only in compelling circumstances. *Goland*, 607 F.2d at 372–73. Since, the Court found, the discovery of new documents did not necessarily mean that the CIA's search for documents had been inadequate, it did not believe that such extraordinary circumstances existed. Accordingly, the Court declined to disturb its prior affirmance of the district court decision.

Here, as in *Goland*, the new evidence is simply "new evidence;" it does not fit within one of the four exceptions where such evidence warrants appellate consideration. Congress has established Fed.R.Civ.Pro. 60(b) as a means of accommodating new concerns brought forward by new evidence. It is this process, rather than a broad reading of our appellate powers, that should be used when new evidence arises following a district court resolution. *See Reuber v. United States*, 750 F.2d 1039, 1051 (D.C. Cir.1984) ("Even where a dismissal is based on summary judgment, so that the reviewing court must view the record in the light most favorable to the appellant, any new evidence must be presented to the district court by a motion under Federal Rule of Civil Procedure 60(b) asking that court to reopen its final judgment."); *National Anti–Hunger Coalition v. Executive Committee*, 711 F.2d 1071, 1075 n. 4 (D.C.Cir. 1983) ("The availability of the rule 60(b) procedure allows us to avoid considering whether this court, in the exercise of its appellate jurisdiction under 28 U.S.C. § 2106 (1976), should remand the case for

further proceedings in light of the new facts."); *see also Weisberg v. Dept. of Justice*, 705 F.2d 1344, 1362 (D.C.Cir.1983) (deciding that discovery of new documents did not impugn credibility of government affidavit attesting to thoroughness of document search, but declining to "assess[ ] the potential significance of [the plaintiff's] refusal to follow the procedure the federal rules established for consideration of newly-discovered evidence or defining with exactitude the reach of our judicial notice powers"). The majority suggests that Rule 60(b), being unavailable in the present case due to its one-year time limitation, supports its action. However, as the *Goland* Court held, we compromise our appellate mandate by granting review of new evidence where the Rule is unavailable. Moreover, such a practice would appear to circumvent the limitations Congress placed on the Rule in the first instance. Thus, I agree with the *Goland* Court that we should consider new evidence only in extraordinary circumstances.

Nor, in my view, does this case present such extraordinary circumstances as to warrant the necessary extension of the authority granted to this Court under 28 U.S.C. § 2106. The majority finds the situation to be extraordinary due to the unavailability of Rule 60(b) relief and the alleged inconsistency of the new evidence—factors that are insufficient to warrant consideration of new evidence under *Goland* and *Center for Auto Safety*. The majority's other justification—the *pro se* appellant's inability to access a computerized legal research service—goes only to the BOP's position in *Oliva v. Bureau of Prisons*, No. 84 Civ. 5741 (JFK) (S.D.N.Y.1986), 1986 WL 2959, and does not in any way obvious to me create a principled distinction from *Goland* or *Center for Auto Safety*. Thus, I conclude that this case does not present a situation so extraordinary as to warrant our consideration of the BOP's recent release of Chapters 2 and 3.

Having set aside the information outside of the trial record on which the majority bases its opinion, I find that the trial judge acted appropriately in reviewing the magis-

trate's report in this case. The majority declines to reach Powell's claim that the trial judge was required to apply a *de novo* standard of review to the magistrate's report. However, as I would not remand this case to the district court to consider the new evidence, I believe we should uphold the judge's decision approving the magistrate's report under a clear-error standard of review.

In the present case, Powell made a general objection to the entire magistrate's report, stating simply that "[t]he plaintiff hereby objects to the entire Report and Recomendation [sic] of the Magistrate and requests the District Judge to conduct a *de novo* review of the proceedings." The district court determined that this "omnibus objection" was insufficiently specific to trigger *de novo* review under 28 U.S.C. § 636(b)(1), which requires a judge to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." This decision is consistent with the majority of the courts of appeal, which have held that *de novo* review is triggered only where the party has made timely and specific objections to the magistrate's report. *See, e.g., Thompson v. Nix,* 897 F.2d 356, 357–58 (8th Cir.1990) ("objections must be timely and specific to trigger de novo review by the District Court of any portion of the magistrate's report and recommendation"); *Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988) ("only those issues fairly raised by the objections to the magistrate's report are subject to review in the district court"); *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370 (6th Cir.1987) (same); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980) ("a party 'may' file objections within ten days or he may not, as he chooses, but he 'shall' do so if he wishes further consideration").

The Ninth Circuit has reached a different conclusion, holding that failure to file timely objections relieves the trial court only of the obligation to review *de novo* questions of fact, while "conclusions of law must still be reviewed *de novo.*" *Barilla v. Ervin,*

886 F.2d 1514, 1518 (9th Cir.1989) (citation omitted). In the Ninth Circuit, then, the trial judge would likely be required to conduct a *de novo* review in this case, as the determination whether a document falls within a FOIA exemption presents a mixed question of law and fact. *Cf. Ferri v. Bell,* 645 F.2d 1213, 1222 (3d Cir.1981).

While this Court has never directly addressed the issue, I find the view espoused by the majority of circuits—that a failure to object to an issue ends entitlement to *de novo* review of that issue—to be more persuasive. One of the leading cases in this area is *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). There, the Fifth Circuit held that a failure to file written objections to proposed findings and recommendations in a magistrate's report barred the party from a *de novo* determination of the issues covered in the report, and from appealing factual findings except on grounds of plain error or manifest injustice. According to the *Nettles* court, the trial judge must make a *de novo* determination of those findings that are objected to, but is otherwise free to accept, reject, or modify the magistrate's report. The court emphasized that judicial efficiency mandated such a rule, even for *pro se* plaintiffs. According to the court,

> It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specially consider. This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.

*Id.* at 410 (citations omitted). *See also Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980) (purpose of Magistrates Act is to relieve judge's workload; if party does not file objections, it is therefore not entitled to later review).

Thus, the Magistrates Act's concern with judicial efficiency indicates that the procedural requirements that attend the use of magistrates should be construed narrowly. Indeed, the Supreme Court has held that appellate courts are free to promulgate rules under which a failure to object to the magistrate's report may waive appellate

review altogether. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *see also Keating,* 848 F.2d at 275 (failure to object to magistrate's report waives appellate review); *Detroit Federation of Teachers,* 829 F.2d at 1370 (same). *Cf. United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981) ("the fundamental congressional policy underlying the Magistrate's Act—to improve access to the federal courts and aid the efficient administration of justice—is best served by our holding that a party shall file objections with the district court or else waive the right to appeal"). We need not address this question in the present case, as we have before us a proper appeal from a district court decision. *See Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir.1987) ("The fact that a particular 'final decision' is the product of the district court's reasoned consideration of the magistrate's report, instead of the court's *de novo* review of the law, does not provide us with a sufficiently strong justification to circumscribe our duties under [28 U.S.C.] § 1291."). However, we should note that a failure to object may, in accordance with *Thomas v. Arn,* result in even more serious consequences to the defendant than simply a failure to obtain *de novo* review.

Thus, where Powell failed to make specific objections to the magistrate's report, it is appropriate for the trial judge to review the report under a clear-error, rather than a *de novo,* standard. The Third Circuit dealt with a case similar to the present one in *Goney v. Clark,* 749 F.2d 5 (3d Cir.1984). In that case, a *pro se* prisoner filed a § 1983 action against the prison warden. The case was tried by a magistrate and, instead of filing objections, the prisoner filed a "Motion for Notification of Appeal." *Id.* at 6. The district court treated the motion as objections, and upheld the magistrate's decision based only on a review of the pleadings, documents and a summary of the testimony.

The Third Circuit held that the district court was not required to conduct *de novo* review of the magistrate's findings because the petitioner's objections were not specific; they stated only a general appeal alleging that the magistrate was biased, and objected to no specific portion of the report. *Id.* at 7. Relying on the fact that a party may waive review through an untimely filing, the court stated, "[w]e are satisfied that providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id.* at 7 (citing H.R.Rep. No. 1609, 94th Cong., 2d Sess. 4–8, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6164–68). Thus, the court concluded that the prisoner's objections lacked the specificity necessary to trigger *de novo* review.

Similarly, in *Mira v. Marshall,* 806 F.2d 636 (6th Cir.1986), the Sixth Circuit held that *de novo* review was unnecessary where a *pro se* defendant made only general objections to the magistrate's report. The defendant's objections stated: "The undersigned objects to each and every finding of the Magistrate and requests that the court conduct a *de novo* review of the record." *Id.* at 637 (citation omitted). The defendant objected specifically to three issues, and then stated, "Petitioner also objects to the other findings and recommendations of the Magistrate and requests that the court conduct a *de novo* review of the record." *Id.* (citation omitted). Relying on *Nettles'*s holding that "[f]rivolous, conclusive or general objections need not be considered by the district court," the court held that *de novo* review was necessary only as to the three listed issues. *Mira v. Marshall,* 806 F.2d at 637–38, citing *Nettles,* 677 F.2d at 410 n. 8.

These cases indicate that the trial judge acted correctly in reviewing the magistrate's report under a clear-error standard. Here, the plaintiff made only a cursory objection to the magistrate's report. It is true that Powell was acting *pro se* in this case, an excuse for procedural inadequacy that the majority found had "some appeal." Maj.Op. at 1242. However, as both *Goney* and *Mira* make clear, even *pro se* claimants are subject to procedural requirements, particularly where those requirements are established for reasons of judicial efficiency. Moreover, if Powell's situation were such that he were unable to meet

those procedural requirements, it is the trial court, rather than the appellate forum, that has the discretion to determine that certain procedural requirements are too rigid for a *pro se* petitioner. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir.1986) (district court appropriately exercised discretionary authority to allow *pro se* party to file objections after 10–day period), *disapproved on other grounds, Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir.1983) (same).

In light of the case law, I believe that we should find that the trial judge acted correctly in finding that Powell's superficial objections were insufficiently specific to trigger *de novo* review. Given that the magistrate's report relied on the then uncontradicted Katsel affidavit, I would also affirm the trial court's conclusion that the magistrate's report was not clearly erroneous.