**Dana M. SCHEER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 98–1613(RMU).**

United States District Court, District of Columbia.

Jan. 28, 1999.

**10**

Jonathan S. Feld, Brand, Lowell & Ryan, Washington, DC, for Dana M. Scheer, plaintiff.

Paul S. Padda, U.S. Attorney's Office, Washington, DC, for Department of Justice, federal defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### Granting Plaintiff's Motion for Summary Judgment; Denying Defendant's Motion for Summary Judgment

This action is brought by the plaintiff, Dana M. Scheer, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking an order to compel the defendant, the United States Department of Justice ("DOJ"), to release reports compiled by the DOJ's Office of Professional Responsibility ("OPR"). The matter is currently before the court on cross motions for summary judgment.

### I. BACKGROUND

In January 1993, Dana M. Scheer was charged in an indictment for offenses related to his work at the law firm of Blank, Rome, Comisky & McCauley, LLP involving improper loans made by Sunrise Savings and Loan Association. The senior federal prosecutor in charge of the investigation and prosecution was Assistant United States Attorney ("AUSA") Lothar Genge. During Mr. Scheer's trial, AUSA Genge allegedly threatened witnesses and in bad faith revoked a co-defendant's immunity. The Honorable William M. Hoeveler of the United States District Court for the Southern District of Florida concluded in an order resolving Mr. Scheer's post-trial motion for acquittal that AUSA Genge had engaged in prosecutorial "excesses" and that "the shifting position of Government counsel, from one trial to the next, suggest[s] that the pure pursuit of jus-

tice may have become secondary to the Government's desire to implicate as many members" of Mr. Scheer's law firm as possible. Plaintiff's Complaint for Injunctive Relief ¶ 10 (citing Judge Hoeveler's Order). On January 18, 1995, Mr. Scheer was found guilty on five of the eight counts in the indictment. On February 1, 1996, Mr. Scheer was sentenced, and his appeal is pending in the Court of Appeals for the Eleventh Circuit.

Following Mr. Scheer's trial, the OPR began an investigation of AUSA Genge's misconduct. Subsequently, on March 13, 1997, Mr. Scheer requested access to the OPR report. On April 21, 1997, the OPR denied the request relying on 5 U.S.C. § 552(b)(7)(A), which provides for the withholding of information that could "reasonably be expected to interfere with enforcement proceedings." Although the OPR report had apparently been completed by April 21, 1997, the OPR maintains that its investigation remained technically open until April 18, 1998, when DOJ officials informed the OPR that no action would be taken. Prior to April 18, 1998, the OPR explains that it may have been "asked to undertake additional investigation."

On April 24, 1997, three days after the OPR denied Mr. Scheer's request, AUSA Genge was allowed to review the OPR report. Subsequently, on December 30, 1997, AUSA Genge resigned from his position.

Mr. Scheer appealed the denial of his request for the OPR report to the DOJ Office of Information and Privacy and was subsequently denied relief. Consequently, Mr. Scheer filed a complaint with this court seeking release of the OPR report, including but not limited to any documents or portions of documents relating to Mr. Scheer, Sunrise Savings and Loan Association, and AUSA Genge's role in the investigation and prosecution of the Sunrise Savings and Loan Association, its directors, officers, attorneys and borrowers.

## II. LEGAL STANDARD

### A. Summary Judgment

Both parties to this action have filed motions for summary judgment. Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . .; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted). Having determined that there are no genuine issues of material fact in this case and viewing the facts in a light most favorable to the defendant, the court concludes that summary judgment should be granted in favor of the plaintiff.

### B. Freedom of Information Act

The FOIA was created to promote the release of "records and materials in the

**12**

possession of federal agencies ... to any member of the general public" unless the requested material falls within one of nine exemptions. *National Labor Relations Board v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 221, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). However, if the government invokes one of the nine exemptions, the burden is placed on the government to justify nondisclosure. *See* 5 U.S.C. § 552(a)(4)(B). In this case, the defendant relied on exemption 7(A) of the FOIA to deny the plaintiff's request for the release of documents. Exemption 7(A) states that records may be withheld if they are "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings...." 5 U.S.C. § 552(b)(7)(A).

The government must overcome two legal hurdles to satisfy its burden for justifying nondisclosure under exemption 7(A). First, the government must prove the existence of a "concrete prospective law enforcement proceeding" for which the records were compiled. *National Public Radio v. Bell*, 431 F.Supp. 509, 514 (D.D.C.1977). Second, the government must prove that the disclosure of the requested information would "interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To prove interference the agency must be "specific as to what information is being withheld and the distinct harm that could result from its disclosure." *Kuffel v. U.S. Bureau of Prisons*, 882 F.Supp. 1116, 1126 (D.D.C.1995). The agency may not be "conclusory or vague." *Id.* Here, the court concludes that the defendant has failed to meet its burden of proving that the release of the requested information would have resulted in distinct harm to prospective enforcement proceedings.

## III. DISCUSSION

In his motion for summary judgment, Mr. Scheer contends that the (1) court should review his request based on circumstances as they exist at the time of judicial review, (2) DOJ has not met its burden of proving that there was a pending law enforcement proceeding, and (3) DOJ has not met its burden

of proving that the disclosure of the requested reports would have interfered with an enforcement proceeding. The court will address each of these arguments in turn.

### A. Time of Review

The general rule when evaluating an agency's decision to withhold disclosure of information under the FOIA is that the court review de novo the agency's decision as of the time it was made. *See Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C.Cir. 1991). The reasoning behind this rule is that "[t]o require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing." *Id.* at 1152 (citing *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 480 (D.C.Cir.1980)). The court has noted certain exceptions to this rule, however, "such as the publication of a document after an agency has decided to withhold," which may make it "appropriate for a court to review the agency decision in light of post-decision changes in circumstances." *Id.* at 1153 n. 10 (citing *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239 (D.C.Cir.1991)).

In *Powell*, the Bureau of Prisons ("BOP") denied a request to release certain portions of a Central Inmate Monitoring Manual claiming that the entirety of the manual was exempt from disclosure under the FOIA because publication would "significantly risk circumvention of the law." *See Powell*, 927 F.2d at 1240–41. In reviewing the BOP's decision, the *Powell* court considered the fact that, after the request was denied, the BOP published substantial portions of the manual. *Id.* at 1241. The court reasoned that it was appropriate to review the BOP's decision in light of the post-decision publication because the change in circumstances went "to the heart of the contested issue" and "called into serious question" the BOP's averment that disclosure of the manual would risk circumvention of the law and was, therefore, not required under the FOIA. *Id.* at 1242–43.

Here, the OPR denied Mr. Scheer's request based on its assertion that the report in question was exempt from disclosure under the FOIA because release would interfere with enforcement proceedings. Specifi-

cally, the OPR maintained that "[s]uch a disclosure, while additional investigation is ongoing, would reveal the scope, direction, and nature of an investigation. That type of information would be beneficial to any subjects and witnesses who are interviewed during the course of additional investigation." *See* Declaration of Daniel Barash ¶ 13. Three days after denying Mr. Scheer's request, however, the OPR released the report in question to AUSA Genge, who was the subject of the OPR's investigation. *See* Defendant's Response to the Court's October 30, 1998 Order. As in *Powell,* the post-decision disclosure of the OPR report here goes to the very heart of the contested issue, specifically whether disclosure might reveal to the subject and witnesses of the investigation the "scope, direction, and nature" of the investigation. Thus, based on the reasoning in *Powell,* the court concludes that it is appropriate to review the OPR's decision in this case in light of the post-decision release of the report to AUSA Genge.

### B. Concrete Prospective Law Enforcement Proceeding

To meet its burden of justifying the nondisclosure of the OPR report, the defendant must first prove the existence of a concrete prospective law enforcement proceeding for which the report was compiled. Reports are compiled for law enforcement proceedings if they result from "investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanction." *Rural Housing Alliance v. U.S. Dep't of Agriculture,* 498 F.2d 73, 81 (D.C.Cir.1974). Here, the OPR report was compiled in the course of an investigation of AUSA Genge for allegedly threatening witnesses and engaging in other professional misconduct. Although the OPR report had apparently been completed by April 21, 1997, when Mr. Scheer's request was denied, there was still the possibility of a future law enforcement proceeding. According to the defendant, law enforcement proceedings remained a possibility until April 13, 1998, when the OPR was informed that no action would be taken against AUSA Genge. Thus, under the defi-

nition espoused in *Rural Housing Alliance,* the court concludes that the defendant has met its burden of demonstrating that the OPR report was compiled for a concrete prospective law enforcement proceeding. *See Kimberlin v. Dep't of Justice,* 139 F.3d 944, 947 (D.C.Cir.1998) (stating that an OPR report developed in the course of an investigation "conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official" was compiled for law enforcement purposes).

### C. Disclosure Must Interfere with Law Enforcement Proceedings

Having demonstrated the existence of a concrete prospective law enforcement proceeding, the defendant must next prove that the disclosure of the requested information would have interfered with that law enforcement proceeding. "If the government can establish a distinct harm resulting from disclosure, the application of exemption (b)(7)(A) is justified." *Kuffel,* 882 F.Supp. at 1126 (citing *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 789 F.2d 64, 67 (D.C.Cir.1986)). The government may not, however, be conclusory or vague in stating how the release of the information would interfere with the prospective law enforcement proceeding.

Here, the defendant maintains that disclosure of the OPR report would have "reveal[ed] the scope, direction, and nature of [the] investigation" and that knowledge of this information by the subject of the OPR investigation, namely AUSA Genge, would have "hinder[ed] OPR's ability to control [the] investigation[ ]...." Declaration of Daniel Barash ¶ 13. This assertion is belied, however, by at least two undisputed facts. First, the OPR report was disclosed to AUSA Genge himself on April 24, 1997, just three days after the denial of Mr. Scheer's request. Second, at the time the report was disclosed to AUSA Genge, the OPR investigation remained technically open despite the fact that the report had apparently been completed. Specifically, the possibility remained that DOJ officials would ask the OPR to undertake additional investigation prior to

making a decision about whether to initiate law enforcement proceedings. Given these facts, the concern proffered by the OPR that disclosure of the report to Mr. Scheer might have hindered its investigation cannot stand as an adequate basis for nondisclosure. If the defendant was truly concerned that harm would result from AUSA Genge potentially learning the scope, direction and nature of the OPR investigation through disclosure to Mr. Scheer, then it would not have directly disclosed the report to AUSA Genge prior to the official close of the investigation. Having done so, it cannot successfully claim that disclosure of the same information to Mr. Scheer at substantially the same stage in the investigation would have resulted in distinct harm. Consequently, the court concludes that the defendant has not met its burden of offering clear proof that disclosure of the OPR report to Mr. Scheer would have interfered with a law enforcement proceeding within the meaning of FOIA exemption 7(A).

## IV. CONCLUSION

Having concluded that the defendant has failed to meet the burden of proof required to justify nondisclosure under FOIA exemption 7(A), the court rules that the OPR report was erroneously withheld from Mr. Scheer. Accordingly, the court will grant the plaintiff's motion for summary judgment and deny the defendant's motion for summary judgment. An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 28 day of January, 1999.

### *ORDER*

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously executed and issued this 27th day of January, 1999, it is hereby

**ORDERED** that the plaintiff's Motion for Summary Judgment is **GRANTED;** and it is

**FURTHER ORDERED** that the defendant's Motion for Summary Judgment is **DENIED;** and it is

**FURTHER ORDERED** that the United States Department of Justice shall provide to Mr. Scheer the OPR report on AUSA Genge as requested, including but not limited to any documents or portions of documents relating to Mr. Scheer, Sunrise Savings and Loan Association, and AUSA Genge's role in the investigation and prosecution of the Sunrise Savings and Loan Association, its directors, officers, attorneys and borrowers; and it is

**FURTHER ORDERED** that the plaintiff is granted leave to file a motion for costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 54 and 5 U.S.C. § 552(a)(4)(E)–(F).

**SO ORDERED.**