**Thomas BECKER, Jeffrey Becker, and Steven Becker, Plaintiffs–Appellants,**

v.

**INTERNAL REVENUE SERVICE, Defendant–Appellee.**

No. 93–2475.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1994.

Decided Aug. 12, 1994.

Rehearing Denied Dec. 12, 1994.

Thomas Becker (argued), pro se.

Jeffrey Becker (argued), pro se.

Steven Becker (argued), pro se.

Gary R. Allen, Murray S. Horwitz (argued), Jonathan S. Cohen, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Jonathan Haile, Office of U.S. Atty., Civ. Div., Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, and FAIRCHILD and FLAUM, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiffs-appellants ("the Beckers") brought this action for declaratory and injunctive relief under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a. The Beckers appeal from judgments entered in favor of defendant-appellee, the Internal Revenue Service ("IRS").

## I. BACKGROUND

By letters dated November 9, 1990, the Beckers (who are brothers) each sent FOIA and Privacy Act requests to the Chicago District Office of the IRS for "a copy of the IMF [Individual Master File] Specific Transcript, IMF General Transcript, and IMF Literal Transcript"; "all information in the audit division"[1]; and "all information in the criminal division" which concerned each brother.[2] Feb. 26, 1991 Compl., Ex. A. The IRS requested a thirty-day extension, to which the Beckers agreed.

IRS Disclosure Specialist Mary Cooper conducted a search of the Chicago District; no records were found in the Individual Master File. In December 1990, she requested transcripts from the Martinsburg Computing Center; no records were found.

In January 1991, the Beckers met with Cooper at her office. She gave them blank transcripts, and told them she had found no documents relating to them. The transcripts were blank because there was no record of the Beckers filing a tax return.[3] She told them that she would continue to search for documents relating to them.

The Beckers filed administrative appeals. After receiving no response within the statutory time limit, plaintiffs filed their complaints in federal district court in February 1991.

---

1. Although the Beckers requested information from the "audit division," there is no such division. The IRS Disclosure Specialist construed the request to mean the Examination Division, which conducts audits.

2. Steven requested documents from 1979 to the present; Jeffrey and Thomas requested documents from 1980 to the present.

3. Apparently, the IRS Master File database requires a tax return to enter information on an individual. And, because the Beckers have no record of filing tax returns, their names were not contained in the Master File.

In March, Cooper sent inquiries for documents relating to the Beckers to the Criminal Investigation Division and Examination Division. A search of the IRS's Audit Information Management System was conducted. Again, no documents were found.

At a May 28 status hearing in district court, the Beckers provided, among other things, letters which had been sent to Jeffrey and Steven from the IRS scheduling an appointment to review their tax returns, listing Ed Turek as the contact person. This information enabled the IRS to discover the names of the agents assigned to the Becker cases, whom Cooper phoned. A further search was conducted, including a search of the Non–Master File records of the Audit Information Management System. Revenue Agent Edward Turek had been assigned to the Jeffrey and Steven Becker cases.[4] The files on Jeffrey and Steven were closed on April 22, 1991.[5] Revenue Agent John Patrick Schmucker had been assigned to the Thomas Becker case.[6] The file on Thomas was closed on April 23, 1991.[7]

Cooper met with the agents and reviewed their complete files, finding a total of 177 documents.[8] Cooper states that "[i]n evaluating why our initial search revealed no records for Steven, Jeffrey, and Thomas Becker, we determined that the records maintained by the Examination Division had been established and were controlled on Non–Master file for Thomas Becker and no controls were established for Steven and Jeffrey Becker.

Our search had been limited to Master File based on the FOIA request for each brother." Aug. 5, 1991 Cooper Aff. ¶ 8.

On April 9, 1991, the separate Becker actions were consolidated. On May 28, the Beckers filed a motion to compel the IRS to prepare a *Vaughn* Index.[9] Then District Judge Rovner ordered the IRS to either produce an affidavit that no documents existed or prepare a *Vaughn* index. On July 9, the IRS filed a *Vaughn* index describing the 177 documents which were found in Revenue Agents Turek's and Schmucker's files on the Beckers, and listing the IRS's reasons for withholding certain documents. The IRS released eighty-four pages in full and twenty-seven in part, and withheld sixty-six pages in full.

The IRS filed a motion for summary judgment. As an initial response, the Beckers filed a motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure to allow them to conduct discovery before responding to the IRS motion. Judge Rovner ruled that she would consider the motion for summary judgment and motion to conduct discovery together, and the Beckers filed a response to the IRS's motion for summary judgment.

Judge Rovner conducted an *in camera* review of the documents. On February 14, 1992, she denied the IRS's motion for summary judgment with respect to the Privacy Act, and on March 27, 1992, she granted the IRS's motion with respect to the FOIA claims. On March 31, Judge Rovner stated

---

**4.** The files on Jeffrey and Steven were opened as a result of a referral from the Illegal Tax Protestor Coordinator. (We will use the IRS's spelling of "protestor" when used in the context of an IRS title or quotation. For all other purposes, we prefer to use "protester.") Apparently the referral was prompted by Jeffrey's and Steven's association with the National Commodity Exchange Association, which the IRS characterizes as "a known warehouse banking operation used by illegal tax protestors and tax evaders." Jan. 9, 1991 Grisolano Aff. ¶ 3.

**5.** The files were closed pursuant to a memorandum advising that Jeffrey and Steven should be decontrolled from the Illegal Tax Protestor Program.

**6.** The file on Thomas was opened as a result of a referral from the Illegal Tax Protestor Coordinator. Apparently the referral was prompted by

Thomas's association with the National Commodity Exchange Association.

**7.** The file was closed pursuant to a memorandum advising that Thomas should be decontrolled from the Illegal Tax Protestor Program.

**8.** In the FOIA context, "document" and "page" are synonymous.

**9.** In preparing a *Vaughn* Index, an agency must list the title of the document or category of documents, the date of the document, the author and recipient(s), a detailed factual description of the document, and the statutory exemption the agency is claiming to support nondisclosure. The index is named after the case in which it was adopted, *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

that the discovery motion was moot. On April 6, the Beckers filed a motion to alter or amend. On August 26, the action was transferred to Judge Alesia,[10] who subsequently denied the Beckers' motion to alter or amend, granted the IRS's motion for leave to file a supplemental memorandum in support of summary judgment with respect to the Beckers' Privacy Act claims, and granted the IRS's motion for summary judgment regarding the Privacy Act. This appeal followed.

## II. DISCUSSION

### A. FOIA

Under FOIA, agencies are required to make their records available to the public unless there is a specific exemption. 5 U.S.C. § 552(d); *United States Dep't of Defense v. Federal Labor Relations Auth.,* — U.S. —, —, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994). Exemptions are to be narrowly construed, *Matter of Wade,* 969 F.2d 241, 246 (7th Cir.1992), and the IRS bears the burden of proving that the documents it has withheld are exempt. 5 U.S.C. § 552(a)(4)(B); *Silets v. United States Dep't. of Justice,* 945 F.2d 227, 228 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992) (citing *Antonelli v. Drug Enforcement Admin.,* 739 F.2d 302, 303 (7th Cir.1984)).

The cases agree that in the FOIA context, we review the district court's interpretation that documents are exempt by first considering whether the court had an adequate factual basis for the decision rendered and if so, whether the decision was clearly erroneous.[11] *Wright v. Occupational Safety and Health Admin.,* 822 F.2d 642, 645 (7th Cir.1987) (citing *Antonelli,* 739 F.2d at 303). There is no real challenge to the factual basis on which Judge Rovner relied to determine whether the documents were exempt—she had not only the IRS's *Vaughn* index, but conducted an *in camera* review. We therefore need only determine whether Judge Rovner's ruling that all the documents which the IRS withheld were exempt from disclosure was clearly erroneous.

The Beckers challenge Judge Rovner's determination that certain documents are exempt pursuant to (b)(5), (b)(7)(C), and (b)(7)(E) of § 552. The Beckers do not challenge the rulings regarding documents to which exemptions were claimed pursuant to § 552(b)(2)[12] or pursuant to § 552(b)(3) in conjunction with I.R.C. § 6103.[13] We therefore do not address these latter documents.

#### 1. Documents Exempt Under § 552(b)(5)

The IRS is not required to release "inter-agency or intra-agency memorandums or letters which would not be available by

---

10. Judge Rovner was appointed to the Court of Appeals.

11. Although procedurally the issue of whether documents are exempt under FOIA is often brought before a district court by motion for summary judgment, as in this case, there is some tension with the rules applying to summary judgment and review thereof. Whether the documents to be considered are all before the court (or whether a reasonable search has been made) and whether documents are exempt is often determined on the basis of affidavits by agency employees (and lack of access to the agency documents limits the opportunity of the requesting party to obtain affidavits showing any conflict).

The issue whether a document is exempt will often involve interpretation of the document *vis-a-vis* the standards for exemption and in the light of the background of the matter. The opportunity of the requesting party to argue that issue is limited by the fact that he or she does not know the contents of the document withheld or its

redacted portion (except as suggested by a *Vaughn* index, if one has been created) and he or she may not be familiar with some of the background facts. As a result, the real responsibility for appraisal of the issue is with the district court, and review by the appellate court is correspondingly limited.

12. This section exempts documents "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The IRS relied on this section to withhold document numbers 114–117 (with additional portions redacted pursuant to § 552(b)(7)(C), discussed in section 2) and 139–142 (duplicates of 114–117).

13. This section exempts documents "specifically exempted from disclosure by statute...." 5 U.S.C. § 552(b)(3). Section 6103 of the Internal Revenue Code, "Confidentiality and disclosure of returns and return information," has been construed to exempt tax return information from disclosure under FOIA. The IRS relied on this section alone to withhold document numbers 66–85 and 159–178 (duplicates of 66–85).

law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

We must examine three documents (actually six, but three are duplicates) with respect to exemption (b)(5).[14] Two of the documents were prepared by an IRS Assistant District Counsel; the Beckers do not challenge Judge Rovner's conclusion that communications between IRS personnel and an agency attorney may be withheld pursuant to (b)(5).[15] This leaves one document, which the IRS released in part (with redactions) to the Beckers after this appeal was commenced.[16]

The IRS claims that the document is exempt under the deliberative process privilege. The parties agree that for this privilege to apply, the document must be "predecisional" and "deliberative."

The purpose of the (b)(5) exemption "is to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). Section (b)(5) "is narrowly construed, protecting those documents that are predecisional (to avoid chilling discussion), but not exempting documents explaining an agency's final decision." *Matter of Wade,* 969 F.2d at 247. The IRS "bears the burden of proving what deliberative process was involved *and* what role the document played in that process." *King v. Internal Revenue Service,* 684 F.2d 517, 519 (7th Cir.1982).

As noted above, the IRS has released the document in part to the Beckers, with redactions, since the appeal to this court was taken. We therefore consider only whether the IRS may appropriately withhold the redacted material under the exemptions it claims. The document is a memorandum from Special Agent Grisolano,[17] to Revenue Agent Edward Turek, who had been assigned to the Jeffrey and Steven Becker cases. The majority of the redacted material (as well as the disclosed portion of the memorandum) is contained in Special Agent Grisolano's January 1991 affidavit, of which the Beckers have a copy. The IRS has not attempted to explain how the document itself, or the redacted material, is "predecisional" and "deliberative." We note that perhaps the entire document would have been exempt from disclosure under another provision of FOIA (*e.g.* § 552(b)(7)(E), discussed in section 3), but the IRS does not claim this exemption; we do not see how the two other exemptions claimed by the IRS are applicable.[18] We conclude that up to this stage the IRS has not met its burden of showing that the material redacted in this document is exempt.

2. *Documents Exempt Under § 552(b)(7)(C)*

■ On a number of documents, IRS employee initials, names and phone numbers were redacted. The IRS claims that this information may be withheld pursuant to § 552(b)(7)(C),[19] which provides an exemption for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could

**14.** Document numbers 45, 64–65, 127 (duplicate of 45), 156–157 (duplicates of 64–65).

**15.** Section (b)(5) exempts documents protected from civil discovery by attorney-client privilege. *King v. Internal Revenue Service,* 684 F.2d 517, 519 (7th Cir.1982).

**16.** Document number 45 (and duplicate document number 127).

**17.** Special Agent Grisolano was assigned to a criminal tax investigation of the Beckers' father.

**18.** The IRS claims the document is exempt under 5 U.S.C. § 552(b)(5) and § 552(b)(3) in conjunction with I.R.C. § 6103. One possible application that we see for the latter exemption relates

to the identity of an individual who is not referred to in the Grisolano affidavit. The IRS does not, however, address this matter. We leave any such issue for the district court's consideration on remand.

**19.** We note that this court has held that agency employee initials may properly be exempted from disclosure under § 552(b)(2) (exemption for information "related solely to the internal personnel rules and practices of an agency"). *Scherer v. Kelley,* 584 F.2d 170, 175–176 (7th Cir.1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979) (initials and signature stamps, among other information on agency documents, exempt from disclosure); *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir.1977) (same).

reasonably be expected to constitute an unwarranted invasion of personal privacy." [20]

■ Judge Rovner engaged in a balancing test, weighing the employees' privacy interests against the public interest in disclosure. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (holding that rap sheets are exempt from disclosure under § 552(b)(7)(C)). The Beckers must show a "substantial public interest" in disclosure to outweigh privacy concerns. *Matter of Wade*, 969 F.2d at 246. The only public interest a court need examine in the balancing process is whether disclosure would contribute " 'significantly to public understanding *of the operations or activities of the government.*' " *United States Dep't of Defense v. Federal Labor Relations Auth.*, —— U.S. ——, ——, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994) (addressing exemption (b)(6) [21]) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 755, 109 S.Ct. at 1472). Judge Rovner found that these documents were compiled for law enforcement purposes (*see Clarkson v. Internal Revenue Service*, 811 F.2d 1396, 1397 (11th Cir.), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 533 (1987)) and that the employees have an interest in nondisclosure because they may not want the Beckers to be able to contact them. Judge Rovner found that the Beckers advanced no public interest in disclosure, and discerned no such interest on her own evaluation.

The Beckers do not take issue with Judge Rovner's conclusion that the documents were compiled for law enforcement purposes, or that the IRS employees have a privacy interest in protecting their names from disclosure. The Beckers argue that Judge Rovner improperly categorized them and withheld the information based on their status.

■ It is fundamental that " 'the identity of the requesting party has no bearing on the merits of his or her FOIA request.' " *United States Dep't of Defense v. Federal Labor Relations Auth.*, —— U.S. ——, ——, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 771, 109 S.Ct. at 1480). However, the nature of an employee's work may render release of personal information an unwarranted invasion of personal privacy. *See United States Dep't of Navy v. Federal Labor Relations Auth.*, 975 F.2d 348, 353 (7th Cir.1992) (addressing exemption (b)(6)) ("federal employees have a privacy interest in the non-disclosure of their names and home addresses") ("If a FOIA disclosure request would not reveal information about the government's operations, then it is not in the public interest." *Id.* at 354.); *Matter of Wade*, 969 F.2d at 246 (redaction of FBI agent's name acceptable to avoid annoyance by requesting party and where requesting party has not offered a substantial public interest); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977) (names of FBI personnel and "other law enforcement personnel" exempt from disclosure); *Fischer v. Internal Revenue Service*, 621 F.Supp. 835 (D.C.N.Y. 1985) (deletions of IRS personnel names from documents generated with respect to requester's tax liability proper under § 552(b)(7)(C)); *Stauss v. Internal Revenue Service*, 516 F.Supp. 1218, 1222 (D.C.D.C. 1981) (names of IRS employees who have worked on tax protest project properly withheld under § 552(b)(7)(C)).

The Beckers argue that they need the employee names in order to discover documents relevant to their FOIA request. They do not, however, advance any *public* interest in disclosure. We do not see how redaction of IRS employee initials and the like inhibits the public's understanding of the IRS, and therefore do not find a substantial public interest that would be served by release of this information. With respect to the Beckers' personal interest in disclosure, after reviewing the full record before us, and given Judge Rovner's determination that the IRS

---

**20.** 5 U.S.C. § 552(b)(7) lists five other conditions, one of which must be present before an agency can claim an exemption for documents compiled for law enforcement purposes.

**21.** Pursuant to § 552(b)(6), the IRS is not required to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

search was reasonable,[22] we believe any such interest is negligible, and does not outweigh the employees' privacy interests. We conclude that Judge Rovner's finding that the documents were properly redacted pursuant to § 552(b)(7)(C) was not clearly erroneous.[23]

### 3. Documents Exempt Under § 552(b)(7)(E)

■ The IRS is not required to release "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The Beckers argue that "exemption 7(E) is properly invoked *only* for techniques not generally known to the public.... the technique used to identify the plaintiffs in the present case [a 1985 IRS raid on the National Commodity Exchange Association] is well-known to the public." Pls.' Br. at 30–31.

Our review of the documents, however, shows that none of the documents the IRS withheld under (7)(E) relate to the raid, but rather discuss varied investigative techniques used by the IRS with respect to tax protesters. The documents unquestionably fall under the exemption. We therefore conclude that Judge Rovner's finding that the relevant documents were exempt under § 552(b)(7)(E) was not clearly erroneous.[24]

### 4. Discovery

■ The Beckers sought discovery "regarding the adequacy or good faith of defendant's record search." Pls.' Sept. 5, 1991 Motion at 1. On that day, Judge Rovner entered a minute order, "Plaintiffs [sic] motion for continuance to proceed with discovery ... will be taken along with motion for summary judgment. Briefing schedule to stand." The opinion which granted summary judgment in favor of the IRS with respect to the Beckers' FOIA claims did not address the discovery motion. At a March 31, 1992 status hearing, upon the Beckers' inquiry, Judge Rovner apparently stated that the Beckers' discovery motion was moot.

When she ruled on the IRS's motion for summary judgment, Judge Rovner concluded that the IRS search was reasonable after reviewing IRS Disclosure Specialist Cooper's affidavit because Cooper made repeated attempts and eventually located information even though it is difficult to find information for those who do not file returns, and given the vagueness of the Beckers' requests.

■ When determining whether the IRS search was reasonable, the facts are viewed in the light most favorable to the Beckers. *Zemansky v. Environmental Protection Agency,* 767 F.2d 569, 571 (9th Cir. 1985). However, " '[s]elf-serving assertions of government wrongdoing and coverup do not rise to the level justifying disclosure.' " *Matter of Wade,* 969 F.2d at 246 (citations omitted). An agency may establish the reasonableness of its search through affidavits. *Pollack v. United States Bureau of Prisons,* 879 F.2d 406, 409 (8th Cir.1989); *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927,

---

**22.** See the discussion in section 4.

**23.** The documents of which portions were appropriately redacted pursuant to § 552(b)(7)(C) because they contained names, initials and/or phone numbers of IRS employees are numbers 21, 34, 36, 46, 47, 94, 98, 99, 100, 105, 109, 113, and 149. The documents of which portions were redacted for the above reason and/or for the reason that they contain information on third parties (to which the Beckers do not raise an argument on appeal) are numbers 19–20, 22, 26–31, 104 (duplicate of 22), 121–126 (nearly identical deletions as in 26–31).

**24.** The documents of which portions were appropriately withheld pursuant to § 552(b)(7)(E), and which the IRS also withheld pursuant to § 552(b)(5), are numbers 60–61 and 118–119 (duplicates of 60–61). Because it is unnecessary to do so, we do not consider whether these documents were also exempt under (b)(5). Additionally, document numbers 62–63, 120, 154–155 (duplicates of 62–63), and 158 (duplicate of 120) were appropriately withheld pursuant to (b)(7)(E). The IRS withheld these documents pursuant to other exemptions which we need not consider.

100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). "The issue is *not* whether other documents may exist, but rather whether the search for undisclosed documents was adequate.... The adequacy of the document search is judged under a reasonableness standard. The agency may rely on reasonably detailed nonconclusory affidavits submitted in good faith to support their claims of compliance." *Matter of Wade,* 969 F.2d at 249 n. 11 (citing *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984)). The Beckers challenge only the timing of the ruling on their discovery motion; they do not directly challenge Judge Rovner's conclusion that the IRS search was reasonable.

The Beckers argue that Judge Rovner erred because she did not rule on their discovery motion before ruling on the summary judgment motion, thereby failing to exercise her discretion. *See Garrett v. City and County of San Francisco,* 818 F.2d 1515 (9th Cir.1987) (trial court's grant of summary judgment and subsequent ruling that discovery motion was moot was error in Title VII action where plaintiff sought discovery of disparate treatment). In their materials filed in support of their motion to conduct discovery, the Beckers suggested that Cooper did not make a complete search in a timely manner, that the IRS's affidavits do not indicate whether searches were directed to specific people and specific items, and that Cooper failed to follow certain leads from information given by the Beckers and from the files maintained by Turek and Schmucker.

"A district court has wide discretion with respect to discovery matters." *Brown–Bey v. United States,* 720 F.2d 467, 470 (7th Cir.1983) (habeas corpus context); Fed. R.Civ.P. 56(f) (a court "*may* order a continuance to permit ... discovery to be had....") (emphasis added). We therefore need only decide if Judge Rovner abused her discretion when she failed to rule on the Beckers' discovery motion before granting summary judgment in favor of the IRS. *See Brown–Bey,* 720 F.2d at 471; *Antonelli v. Sullivan,* 732 F.2d 560, 562 (7th Cir.1984) (district court's failure to rule on motion for production of *Vaughn* index prior to ruling on mo-

tion for summary judgment not error when affidavits described documents in sufficient detail).

In effect, Judge Rovner must have been satisfied that discovery was unnecessary when she concluded that the IRS's search was reasonable and ruled in favor of the IRS on summary judgment. And, Judge Alesia separately considered the Beckers' discovery motion when he ruled on the Beckers' motion to alter or amend. The Beckers have not shown that Judge Rovner's failure to rule on their discovery motion before ruling on the motion for summary judgment prejudiced them. *See Brown–Bey v. United States,* 720 F.2d at 470.

Given the nature of a FOIA case (i.e. an agency may establish reasonableness of a search by affidavits), Judge Rovner's conclusion that the IRS's search was reasonable, and that the Becker's have shown no prejudice from the failure to rule on the discovery motion before ruling on the IRS's motion for summary judgment, there was no reversible error.

### 5. *Miscellaneous Matters*

 FOIA requires that "[a]ny reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). The Beckers argue that Judge Rovner erred when she failed to make a finding regarding whether there were portions of the fully withheld documents which were segregable. This is not, however, the typical case which necessitates remand for a determination of segregability, because Judge Rovner did not simply rely on IRS affidavits describing the documents, but conducted an *in camera* review. *See e.g., Hopkins v. United States Dep't of Housing & Urban Dev.,* 929 F.2d 81, 85–86 (2d Cir.1991). Our own examination of the documents leads us to the conclusion that there is no significant question on this matter.

 The Beckers also claim that Judge Rovner improperly referred to them as "tax protesters" and "tax cheats." Any implications that Judge Rovner's use of terms cre-

ates is unfortunate, but the Beckers' arguments that her use of these terms somehow affected the decision on the merits are unpersuasive.

■ The Beckers additionally contend that the IRS obtained their names through an illegal search of the National Commodity and Barter Association ("NCBA") in April 1985, and therefore the IRS must disclose any materials which were obtained as a result of the illegal search. In *Voss v. Bergsgaard,* the Tenth Circuit upheld a decision that the IRS's search warrants for the NCBA did not describe the items to be seized with sufficient particularity, and also upheld an order to return the seized evidence. 774 F.2d 402 (10th Cir.1985). In *United States v. Stelten,* the Eighth Circuit upheld a decision to deny motions to suppress allegedly illegally seized evidence from the 1985 NCBA raid in trials of six NCBA members for conspiracy to defraud the United States, because the search officers acted in good faith. 867 F.2d 446 (8th Cir.), *cert. denied,* 493 U.S. 828, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989). The court noted that "[a]lthough some of the seized documents identified the names of people who participated in the activities of the NCBA ... that fact does not render their seizure a violation of the members' right of association.... [the warrant] does not violate the appellants' first amendment rights." 867 F.2d at 450, 451.

The cases cited by the Beckers address whether a § 552(b)(7) exemption (relating to documents compiled for law enforcement purposes) was properly claimed. *See Freeman v. United States Dep't of Justice,* 723 F.Supp. 1115, 1122–23 (D.Md.1988) (agency must "demonstrate that the files were generated during legitimate law enforcement activity"); *Wilkinson v. FBI,* 633 F.Supp. 336, 349–50 (C.D.Cal.1986) ("Exemption 7(E) may not be used to withhold information regarding investigative techniques that are illegal or of questionable legality"); *Silets v. FBI,* 591 F.Supp. 490, 497 (N.D.Ill.1984) (plaintiff claimed documents were product of illegal

surveillance) (court noted that "[a]lthough ... [plaintiff] persuasively suggests that the *methods* utilized by the FBI were illegal, there is no evidence presented that the investigations 'lacked any law enforcement purpose.'" (quoting *Pratt v. Webster,* 673 F.2d 408, 422 (D.C.Cir.1982)); *Kanter v. IRS,* 433 F.Supp. 812, 822 (N.D.Ill.1977) ("FOIA does not shield materials relating to unauthorized or illegal investigative tactics").

Here, the Beckers do not take issue with Judge Rovner's conclusion that the IRS has a legitimate law enforcement purpose in investigating potential illegal tax protester activity. There is no allegation that the documents at issue in this FOIA action were obtained by illegal means or for an illegal purpose, or that the documents would reveal illegal investigative techniques. We find no support in the case law for the Beckers' proposition that the alleged illegal seizure of their names taints the documents resulting from investigation of them. We note that the exclusionary rule has been held inapplicable to a federal civil tax proceeding. *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).[25] We are not persuaded that if the Beckers became an object of investigation because their names were obtained from an unlawful search, FOIA would require that documents generated in the investigation, and exempt, must be turned over.

**B. Privacy Act**

■ "Each agency that maintains a system of records shall—... maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). An individual may gain access to his or her record to review it, and may request amendment of the record. 5 U.S.C. § 552a(d).

---

**25.** There is some debate as to whether the exclusionary rule, as a general matter, should be inapplicable to all civil proceedings. *See Llaguno v. Mingey,* 763 F.2d 1560, 1568 (7th Cir.1985). The

Supreme Court has applied the exclusionary rule to a civil forfeiture proceeding. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965).

Judge Alesia found that "[t]he only documents in the record which arguably may directly describe how the plaintiffs exercise their First Amendment rights are a flyer advertising a book and a collection of newspaper articles regarding various IRS actions against certain individuals and groups who are alleged tax protesters or cheats.... Nowhere in this collection of records are the plaintiffs' names mentioned or intimated." Apr. 12, 1993 Mem.Op. and Order at 4. Judge Alesia determined that maintenance of this material in the Beckers' files "unquestionably implies that they are associated with the tax protesters and cheats described in the newspaper articles," and therefore describes "how the plaintiffs exercise their First Amendment rights of speech and association." *Id.* at 4-5. We accept Judge Alesia's conclusion regarding First Amendment rights for present purposes, because the IRS does not challenge this holding on appeal.

Judge Alesia also determined that the documents are "pertinent to and within the scope of an authorized law enforcement activity." Following this statement, Judge Alesia continued, "As such, the IRS may lawfully maintain these records and may withhold this information from plaintiffs under the Privacy Act pursuant to 5 U.S.C. § 552a(k)(2)." *Id.* at 5. However, this proposition, with respect to *maintenance* of files (versus *access* to files), does not follow, because § 552a(k) does not grant authority to claim an exemption from § 552a(e)(7).

Under § 552a(k), an agency head may promulgate rules to exempt certain systems of records from the provisions of the Privacy Act which require that an agency give an individual access to his or her file, among other provisions. The documents the Beckers seek are maintained in the IRS's "Examination Administrative File No. 42.001"; the IRS has exempted the documents contained in this file, a "system of records," pursuant to § 552a(k)(2). 31 C.F.R. § 1.36(b)(1) (1993) ("The Internal Revenue Service: Notice of Exempt Systems"). The IRS cites to reasons given in 31 C.F.R. § 1.36(c)(2) for the

exemption: "to grant access to an investigative file could interfere with investigative and enforcement proceedings ... and disclose investigative techniques and procedures."

Here, the documents were published, do not relate to the Beckers, and are contained in files which were closed in April 1991. We fail to see how disclosure of the documents would contravene the stated reasons for exempting the documents.[26] In any event, we need not rule on whether the IRS may prevent access to the documents pursuant to 31 C.F.R. § 1.36(b)(1), because the Beckers informed us at oral argument that their main objective is to have the records removed from their files.

There is limited discussion in court opinions of the "law enforcement purposes" phrase of § 552a(e)(7). The Privacy Act does not offer a definition, and Courts of Appeals have adopted varying views. *Patterson by Patterson v. Federal Bureau of Investigation,* 893 F.2d 595, 603 (3d Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) (maintenance of file (and perhaps up to six files) regarding sixth grader's project which generated large amount of foreign correspondence with student's name as subject heading) (an agency "must demonstrate that its records on an individual's exercise of First Amendment rights are relevant to an authorized law enforcement activity of the agency"); *MacPherson v. Internal Revenue Service,* 803 F.2d 479, 484 (9th Cir.1986) (notes of individual's speeches maintained in "Tax Protest File" with purpose to give IRS complete picture of conferences where speeches took place exempt) (adopting a case-by-case analysis); *Jabara v. Webster,* 691 F.2d 272, 280 (6th Cir.1982), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983) (maintenance of FBI file on individual active in Arab causes) (rejecting interpretation limiting to investigation of past, present or future criminal activity as too narrow; apparently adopting view that exemption applies if the "investigation is relevant to an authorized criminal investigation or to an authorized intelligence or administrative

**26.** The burden is on the IRS to show a document is exempt under § 552a(k). 5 U.S.C. § 552a(g)(3)(A).

one"); *Clarkson v. Internal Revenue Service,* 678 F.2d 1368, 1375 (11th Cir.1982), *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 533 (1987) (surveillance reports, newsletters and press releases pertaining to individual active in organizations formed to protest taxation maintained in "Tax Protest Project" file) ("to the extent that the IRS has engaged in the practice of collecting protected information, unconnected to any investigation of past, present or anticipated violations of the statutes which it is authorized to enforce, subsection (e)(7) of the [Privacy] Act has been violated"), *decision after remand,* 811 F.2d 1396 (11th Cir.1987) (upholding rejection of Privacy Act claim because documents "are related to investigations of illegal tax protester activities [which is a legitimate law enforcement activity]").

We conclude that the IRS has not sufficiently justified the maintenance of the documents in the Beckers' files. The IRS asserts that it may maintain these articles for possible future uses. Under some circumstances, this may be a legitimate justification for maintaining documents in a file for an extended period of time. We have examined the material, and any thought that it could be helpful in future enforcement activity concerning the Beckers is untenable. The material consists of newspaper articles dating from the middle to late 1980s, with no reference to the Beckers [27]; any potential advantage to having these documents in the Beckers' files, at some uncertain date, is minuscule (and the IRS does not elaborate on how this material would be helpful).[28] This indefinite use must be viewed in light of the fact that Judge Alesia found the Beckers' First Amendment rights are implicated. As the Senate Report on the Privacy Act pointed out,

This section's [5 U.S.C. § 552a(e)(7) ] restraint is aimed particularly at preventing collection of protected information not immediately needed, about law-abiding Americans, on the off-chance that Government or the particular agency might possibly have to deal with them in the future. S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 6916, 6971.[29]

There is a remote possibility that a part of the newspaper articles (describing practices of tax protesters) would be helpful in investigation of persons in general. We are not, however, presented with a situation where documents are maintained in a general file rather than in a specific individual's file. *See e.g., MacPherson v. Internal Revenue Service,* 803 F.2d 479 (9th Cir.1986).

Because we conclude that the IRS has not carried its burden in establishing that the materials are exempt from Privacy Act requirements, the documents should be expunged.

## III. CONCLUSION

Accordingly, the judgment of the district court regarding the Beckers' FOIA claims is REVERSED as to document number 45 (and duplicate document number 127), and AFFIRMED in all other respects.

The judgment of the district court regarding the Beckers' Privacy Act claims is REVERSED as to document numbers 66–85 (and duplicate document numbers 159–178).

This case is REMANDED to the district court for further proceedings consistent with this opinion. Each party will bear his or its own costs of appeal.

---

**27.** *See Voelker v. IRS,* 646 F.2d 332, 335 (8th Cir.1981) ("If Congress had intended to shield from disclosure information in one person's record that pertains to another person, it could have and presumably would have added an exemption to sections 3(j) [§ 552a(j) ] or 3(k) [§ 552a(k) ].") ("a federal agency does not have discretion to withhold information contained in a requesting individual's record on the ground that the information does not pertain to that individual," *id.* at 334).

**28.** An agency must "maintain all records which are used by the agency in making any determination about any individual with such accuracy, *relevance, timeliness,* and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5) (emphasis added).

**29.** Some view the legislative history of the Privacy Act as somewhat inadequate. *See e.g.,* James T. O'Reilly, Federal Information Disclosure § 20.03 (2d ed. 1990).